No. 3.—JOSEPH TOOKE, ex'r, and others, plaintiffs in error, *vs.* THOMAS HARDEMAN, trustee, defendant.

No. 4.—BONAPARTE SHIVERS and others, plaintiffs in error, *vs.* TIMOTHY MASON and Wi,fe defendants.

[1.] In order to put the widow to her election between the provisions made in her favor by the will of the testator, and her legal right to dower in his estate, such testamentary provision in her favor must be declared in *express* terms, to be given in lieu of dower; or the intention of the testator to that effect, must be deduced by clear and manifest implication from the will, founded on the fact that the claim of dower would be inconsistent with the will, or so repugnant to its provisions as *necessarily* to disturb and *defeat* them.

[2.] The Act of 1839, which limits the widow's application for dower to seven years from the death of her husband, operates prospectively, and does not apply to cases where the husband died before the passage of that Act.

[3.] The application by a widow for an assignment of her dower in the estate of her deceased husband, is not within the Statute of Limitations of 1767.

[4.] To constitute an *equitable* bar to the widow's claim of dower, by her acts and acquiescence in the provisions of the will for her benefit, so as to raise the presumption that she had made her election to accept such testamentary provisions in lieu of dower, it must be shown that she was *cognizant* of her rights and acted understandingly.

Tooke and others *vs.* Hardeman.—Shivers and others *vs.* Mason and Wife.

Petition for dower, in Pulaski Superior Court; also, bill in Equity in said Court. Both decided by Judge SCARBOROUGH, March Term, 1849.

These causes, involving the same questions, and being parcel of the same case, were argued together.

Allen Tooke, of Houston County, died, leaving the following last will, which was only proven and recorded:

"GEORGIA, HOUSTON COUNTY:

"In the name of God, amen. I, Allen Tooke, being sick and weak in body, but of sound and disposing mind and memory, and understanding, &c. do make, publish and declare this to be my last will and testament, in the following manner and form:

"*Item 1st*, provides for his burial and funeral expenses.

"*Item 2d.* I give and bequeath to my beloved wife, Julia Ann Tooke, the following negroes: by name, Demps, a man about 35 years old; Joe, a man, about 50 years old; Isabel, a woman, about 30 years old, and her two children, Harriet and Ben; Jensey, a woman, about 40 years old, and Hannah, a girl, about 17 years old. The above negroes to remain on my plantation, under the care, management and control of my executor.

"*Item 3d.* I also give and bequeath to my beloved wife, Julia Ann Tooke, one twenty-acre lot in the town of Hayneville, to be improved by my executor, in a comfortable manner, and the expenses of said improvement to be paid out of my estate; and I further give and bequeath her my carriage and horses; also, all my household furniture now in Vineville, except one bed and furniture for each one of my children.

"*Item 4th.* I also give and bequeath to my beloved wife, Julia Ann Tooke, one-fourth part of all my stock that is on my Dry Creek plantation; the stock that is or may be on the plantation, owned jointly by me and my brother, Joseph Tooke, excepted.

"*Item 5th.* I also give and bequeath to my beloved wife, Julia Ann Tooke, one-fourth part of all the net proceeds in money of my estate, during her widowhood; provided she does not draw out and take from under the control of my executor, the negroes above named and given to her, and which are to remain on my plantation, before expressed; in case she does so, then to receive nothing from the net proceeds of my estate from this time forward.

" *Item 6th.* It is my will and desire, that all my property be kept together by my executor, under his management and control; and in the event of my wife marrying, that she draw out her portion of the estate, as above mentioned; then the remainder to be kept together as before, as expressed, by my executor, until my son, Furney F. Tooke, should become of age or marry; then for him to draw his portion of the estate, the land excepted, which I wish not to be sold or divided, until my youngest son, William Joseph Tooke, becomes of age or marry; then the land, together with all other property, to be equally divided between my three children, Furney F. Tooke, James E. Tooke and William Joseph Tooke.

" *Item 7th.* It is my wish, that my wife, Julia Ann Tooke, be supported by my executor, from my estate, during her widowhood, in a comfortable manner.

" *Item 8th.* It is my wish, that my faithful old servant man, Brit, shall not be put under any overseer, but remain on my plantation, to take care of my stock, and that he be favored by my executor as far as may be expedient.

" *Item 9th.* It is my wish that my executor have full power to sell any of my lands that he may think best, for the benefit of my estate, and buy and sell any other species of property that he may think for the benefit of my estate.

*Item 10th.* I do hereby appoint and constitute my brother, Joseph Tooke, my executor, to carry into effect my will. I do also appoint and constitute him the guardian of my children. I do commit them to him, hoping and believing that he will raise and educate them in the fear of the Lord.

" In testimony whereof, &c. 20th day of September, 1837."

Allen Tooke died in 1837. In 1841, his widow intermarried with Timothy Mason. In 1846, application was made on behalf of Mrs. Mason, for her dower in a tract of land, lying in Pulaski County, in the possession of Allen Tooke, at his death, but which had been sold by his executors in 1839, to Abraham Shivers.

This application was resisted on two grounds—

*First.* That under the will of Allen Tooke, his widow was placed upon her election, either to take her dower or the provisions made for her in the will; that she had accepted, received and enjoyed the provisions made for her in the will, and had thereby made her election, and was barred of her dower.

*Second.* That the application was barred by the lapse of time, more than seven years having elapsed since the right of dower accrued.

Pending the issue joined upon this traverse, Joseph Tooke, the executor, and the heirs and executor of Shivers, the purchaser, filed their bill in Equity, setting forth the foregoing facts, and charging, that the bequests in the will were intended to be in lieu of dower; that the widow permitted two of the negroes to remain on the plantation, and up to the date of her marriage received one-fourth part of the net proceeds of the same, amounting to $700 or $800 per year, and which, with her support from the farm, amounted to more than her dower; that shortly after the death of Allen Tooke, upon an express promise by the widow, that she would make no claim of dower, Joseph Tooke, the executor, (Allen Tooke in his lifetime having purchased a house and lot in the town of Vineville, near Macon, at an expense of $4200,) conveyed the same absolutely to Julia Ann Tooke, who has since occupied and controlled it as her own; the price of which house and lot amounted to more than one third of the value of the whole real estate of Allen Tooke; that said Julia Ann Tooke then relinquished all her right to the lot and improvements bequeathed her in the town of Hayneville; that in 1839, by virtue of the authority vested in him under the will, the executor sold the land in which dower is claimed, to Abraham Shivers, and made to him a warranty deed for the sum of $3200; that the sale took place with a full knowledge on the part of the widow, she making nor raising any objections thereto, but consenting and agreeing to the same; that the executor requested the widow, prior to the sale, to set up and test her claim to dower, if she ever intended to do so, which she declined doing, saying she never intended to set up any such claim; that Shivers took possession of the land, and has retained it ever since by himself and his heirs; that the land is much worn out and diminished in value, and if the widow recovers her dower, the estate of Allen Tooke would be greatly injured by having to refund to the heirs of Shivers for their loss of the dower in said lands. The bill charged, that many of these facts were within the knowledge of Mrs. Mason, formerly Mrs. Tooke, alone, and prayed an injunction against the application for dower.

The answer of Timothy Mason and his wife admitted the ex-

24      SUPREME COURT OF GEORGIA.

Tooke and others *vs.* Hardeman.—Shivers and others *vs.* Mason and Wife.

change of lots by the executor of Allen Tooke and his widow—the lot in Hayneville, and the provision for its improvement, for the house and lot in Vineville—and insisted that it was a fair exchange; denied taking of the negroes bequeathed from the plantation, or that the widow received one-fourth part of the net proceeds of the plantation. They deny that she was supported out of the proceeds of the plantation. They deny that the provisions in the will of Allen Tooke was intended in lieu of dower. Mrs. Tooke, now Mrs. Mason, denied, most emphatically, that there was any understanding, agreement, acceptance or acquiescence, on her part, that all or any of said bequests were to be in lieu or place of dower. It never was so understood or accepted by her, at any time, and she utterly denied that any conversation was ever had between her and the executor in relation to her right to dower, or that he ever asked or solicited her to assert her claim to dower; on the contrary, the subject of dower was never mentioned by him to her, and it is absolutely untrue that she ever told Joseph Tooke that she never intended to apply for dower. The truth was, she was utterly ignorant of the law, or her right under it to dower. She denied that she ever gave any assent to the sale of the land to Shivers. About the time of the sale, the executor told her he had sold the land for $3200, and that she was entitled to one-third of the proceeds. She admitted getting some few articles from the plantation for the use and consumption of the family. The answer denied positively that the provisions of the will were in lieu of dower, or that there had been any acquiescence to bar the widow's right.

Upon the trial, the complainants in the bill offered to prove by William S. Coalson, that Julia Ann Tooke received her support from the plantation in Houston County, having seen her wagon pass his house often, dates not recollected, with corn, fodder and meat. The witness was acquainted with the lands of Allen Tooke, and it would have ruined the place for the widow to take her dower—that is, to have kept the hands all together, the income would have been largely diminished, the plantation would have been materially injured, and would have been compelled to have been broken up.

The Court rejected the testimony and all other to the same point, on the ground that it was immaterial whether Mrs. Tooke had accepted the provisions left her in the will or not; that the

question was a legal one, arising under the will, which did not make a case of election.

Mrs. Louisa Hadnot, examined by commission, swore, that Mrs. Tooke said, shortly after the death of Allen Tooke, that she would not go to the plantation or Hayneville to live, but said if she were allowed to remain where she was, (Vineville,) she would be perfectly satisfied, and would relinquish all claim upon Allen Tooke's estate, except the provisions made for her in the will, and she would never undertake to break or set aside the will. Witness was the sister of Allen Tooke.

The complainants proposed to prove that the property in Vineville, and the provision made for the widow, were of more value than her dower in the lands—which testimony the Court rejected.

The Court charged the Jury, that " the question whether the provisions in the will of Allen Tooke, were expressly or impliedly in lieu of dower, was a legal question for the Court, to be determined by reference to the will itself; that there was no express provision that the legacies were intended to be in lieu of dower, nor could any such intent be legally implied from or by reference to the will, and the provisions in the will were not inconsistent with the widow's right of dower, and do not put her upon her election, and she was entitled to both, unless she had relinquished her dower ; that the Court did not think the Statute of Limitations constituted a bar in this case, because there was no Act of Limitations till 1839, and that Act did not apply to this case."

In the Supreme Court, it was agreed between the parties, that these cases should be argued upon the following points :

1st. Whether the widow is entitled to dower, under the will of Allen Tooke and the bill and answer filed and the facts therein stated.

2d. Whether the case is within the Statute of Limitations.

John M. Giles and Eli Warren, for plaintiffs in error, on the first point cited the following authorities :

Pearson vs. Pearson, 1 *Bro. Ch.* 292, *n.* 1 *Greenlf. Ev.* §§286 to 291, *and notes.* 1 *Roper on H. & W.* 571, 596, 566. 2 *Sugd. on Pow.* 144. 8 *Woodde's Lectures,* 293. McGinnis vs. McGin-

*nis*, 1 *Kelly*, 501.    5 *Ga. Rep.* 341.    13 *Ves.* 220.    *Worthington on Wills*, 444.    7 *Cranch*, 370.    4 *Madd. Rep.* 119.    2 *Ves. & Bea.* 222.    5 *Madd. R.* 61.    2 *Sch. & Lef.* 444.    1 *Sim. & Stu.* 513.    3 *Russ.* 192.    1 *Jacob*, 503.

On the second point—

3 *Blackstone's Com.* 172, 191.    1 *Sanders*, (*by Williams*,) 261, *b. note. Johnson vs. Lancaster*, 5 *Ga. Rep.* 45.    *Watkins vs. Wool-folk, Ib.* 268.    6 *John. Ch. Rep.* 196.    1 *Brev.* 76.    3 *Ib.* 246.    1 *Const. Rep. by Treadwell*, 112.

C. B. Cole and S. T. Bailey, for defendants in error, cited—

*French vs. Davis*, 2 *Ves. Jr.* 572.    *Adsit vs. Adsit*, 2 *John. Ch. R.* 448.    4 *John. Ch.* 9.    *Bull vs. Church*, 5 *Hill's N. Y. Reports*, 206.    *S. C.* 2 *Denio's Rep.* 430.    *Schley's Dig.* 75, note c.    *Wake-man and Wife vs. Roache, Dudley's Ga. Rep.* 123.

*By the Court.*—Warner, J. delivering the opinion.

This is an application for dower by the widow of Allen Tooke, deceased, under the Statutes of this State.    By our law, the widow is entitled to her dower, in all lands of which her husband died seized and possessed, and such as he acquired in her right, by his intermarriage with her.    *Prince*, 249.    On the trial of this cause on the Equity side of the Court, the Jury found a verdict in favor of the widow.    The equitable circumstances charged in the bill, extrinsic of the will, were expressly denied by the answer, and supported but by one witness whose testimony was admitted by the Court.    The verdict of the Jury must be considered as *conclusive* against the allegations made by the complainants, so far as the same relate to her *waiver* of her dower, and her *acquiescence* in the sale of the land by the executor.    The testimony offered, and rejected by the Court below, only went to show, that the widow had received and enjoyed the benefit of the provisions made for her by the testator's will, so that the main question on this branch of the case is, whether the testator, by the bequests and devises to his widow, intended the same should be in lieu of her dower.

Tooke and others *vs.* Hardeman.—Shivers and others *vs.* Mason and Wife.

The whole question, as was ruled by the Court below, is involved in the construction of the testator's will.

[1.] The right of the widow to dower in the lands of her. deceased husband, is a legal right, of which she cannot be deprived by a testamentary disposition in her favor, unless such testamentary disposition, when taken in connexion with the other provisions of the testator's will, *necessarily* be of such a character as to put her to an election, either to take the provision made for her by the will, or her dower. Without attempting to review and reconcile the numerous and conflicting decisions which are to be found in the books upon this "greatly agitated subject," as Ch. *Kent* calls it, in *Adsit vs. Adsit,* (2 *John. Ch. Rep.* 451,) we will state the rule which, in our judgment, is best sustained by principle and supported by authority.

In order to put the widow to her election, the testamentary provision in her favor must be declared in *express* terms, to be given in lieu of dower ; or the intention of the testator to that effect, must be deduced by clear and manifest implication from the will, founded on the fact, that the claim of dower would be *inconsistent* with the will, or so repugnant to its provisions, as necessarily to disturb and *defeat* them. *Fuller vs. Yates,* 8 *Paige's Rep.* 325. *Adsit vs. Adsit,* 2 *John. Ch. Rep.* 448. *Church vs. Bull,* 2 *Denio's Rep.* 430. *French vs. Davis,* 2 *Vesey, Jr.* 572. *Strahan vs. Sutton,* 3 *Vesey, Jr.* 249.

In the case before us, the testator has not expressly declared that the provisions in his will for the benefit of his widow, are given to her in lieu of dower. Will the widow's claim of dower out of the testator's estate, so disturb and *defeat* the other dispositions made of his property in his will, as *necessarily* and *manifestly* imply that it was his intention to exclude her from her legal right of dower ? The testator, by the second clause of his will, gave to his wife seven negroes absolutely. By the third clause, he devised to her a twenty-acre lot in the town of Hayneville, to be improved and paid for out of his estate; and he also gave her his carriage and horses, and household furniture, except one bed and furniture for each of his children. By the fourth clause, he gave certain stock to his wife, then on his Dry Creek plantation. By the fifth clause he gave to his wife the one-fourth part of all the net proceeds of his estate, in money, during her widowhood, on *condition* she did not take from under the control of his exec-

utors the seven negroes which he had given her, in the second clause of his will.

By the 7th clause of his will, the testator directs that his wife shall be comfortably supported out of his estate, during her widowhood.

The devise of the Hayneville lot is all the provision which the testator has actually made for the widow, out of his real estate. The one-fourth part of the net proceeds of his estate, directed to be paid in money by the fifth clause of the will, is to be considered rather as a compensation for the labor of the slaves he had given her, so long as she permitted them to remain on the plantation under the control of the executor, than as a charge upon his real estate. All the testator's lands, except the Hayneville lot, he devised to his three sons, to be equally divided between them, when the youngest became of age, or married. The widow derives her title to the seven negroes, and to the Hayneville lot and the improvements to be made thereon, to the carriage and horses, to the household furniture at Vineville, to the one-fourth part of the stock on the Dry Creek plantation, and to a comfortable support during her widowhood, from the *bounty* of the testator under the will. The testator had an undoubted right to make an absolute gift of this portion of his property to her; but in doing so, did he intend to bar her of her legal right to dower in his other lands? He has not so declared in his will. What disposition of the testator's other property will *necessarily be defeated* by her claim of dower, and thereby clearly manifest such an intention on his part? Not one that we can discover. The widow can take the Hayneville lot, and all the bequests made to her by the testator, and claim her dower out of the Pulaski lands, without defeating the devise of his lands to his three sons. The devise of the testator's lands to his three sons, will be enjoyed by them, subject, it is true, to the widow's right of dower. The devise to the sons will be less valuable, but that constitutes no objection. *Ackley vs. Finch*, 7 *Cowen's Rep.* 290. *French vs. Davis*, 2 *Vesey. Jr.* 581.

The devisees of the land under the will of the testator, as well as the purchasers thereof, take it subject to the *legal incumbrance* of the widow's dower. They take the land *cum onere*, and it does not necessarily follow, because their present enjoyment of the estate devised to them is rendered less valuable by the assertion

Tooke and others *vs.* Hardeman.—Shivers and others *vs.* Mason and Wife.

of the widow's legal right of dower, that this disposition of the testator's estate will be *defeated*, so as to put the widow to her election, according to the rule which we have before stated.    To defeat the widow's legal right of dower, by an *implied* intention of the testator to exclude her, such intention must clearly and incontrovertibly appear from the face of the will itself; the provisions of the will must be so repugnant and wholly inconsistent with her claim of dower, in the particular portion of the estate to which the claim of dower is made, as *necessarily* to imply that it was the intention of the testator to bar her of her legal right to dower.    In the case before us, no such repugnancy or inconsistency exists; not one of the dispositions of property made by the testator will be *defeated* by the widow's claim of dower in the lands specified in the record.    The question is not what the testator might have done, had the subject of dower been in his mind at the time of making the will; but the question is, whether we can say, from the dispositions of the will, it is *impossible* that the testator did not intend she should have what he gave her by his will, and her dower, which the law gives her.    In our judgment she can take both what the testator gave her by his will, and what the law gives her, without defeating any of the dispositions of the testator's property made by it.

[2.] With regard to the Statute of Limitations, the Act of 1839, which limits the widow's application for dower to seven years from the death of her husband, cannot apply to this case, for the reason that the testator died before the passage of that Act.    The testator died in 1837.    The Act of 1839 only operates *prospectively*.    *Hotchkiss*, 435.

[3.] It is insisted, however, that the widow's application for dower is embraced in the general words of the Act of 1767.    By that Act, *all suits* or actions for land, are required to be instituted within seven years *after the title or cause of action shall or may descend or accrue to the same*, and at no time after the said seven years.    *Prince*, 573.    The argument for the plaintiff is, that this is a *suit* by the widow, to obtain possession of the land.    It is an application by the widow to have her dower assigned to her, and to that extent it may be considered a suit; but, in our judgment, the application by a widow to have her dower assigned to her in the lands of her deceased husband, is not a suit to recover the *possession* of the land, which may be so assigned.    The widow

could not enter upon the land for her dower, until it had been assigned to her; nor could she have maintained an action of ejectment for her dower, before the assignment thereof. *Jackson vs. O'Donaghy,* 7 *John. Rep.* 247. *Jackson vs. Vanderhyden,* 17 *John. Rep.* 167. *Jackson vs. Aspell,* 20 *John. Rep.* 411. *Wakeman and wife vs. Roache, Dudley's Rep.* 123. The cause of action, to recover the *possession* of the land, did not accrue to the widow until after the assignment of her dower; consequently the Statute of 1767 did not run against her; and her *application* for such assignment, is not within the provisions of that Act.

[4.] But it is further insisted, that if the widow is not barred by the Statute of Limitations, from asserting her right to dower in this case, yet, having accepted the provision made for her by the will, and acquiesced in the same since the death of the testator, she is now *equitably* barred from asserting her dower in the testator's estate; that she is to be considered as having made her election to accept the provisions of the will in her favor, in lieu of dower.

In answer to the argument of the plaintiff in error, on this branch of the case, it is sufficient to say, that before any presumption of an election can arise against the widow, in consequence of her *acts* or *acquiescence,* it must be shown that she was *cognizant* of her rights, and acted understandingly. 2 *Story's Eq.* 359, §1095. *Snelgrove vs. Snelgrove,* 4 *Dessaussure's Rep.* 300. *Wake vs. Wake,* 1 *Vesey, Jr.* 335. So far from the widow being cognizant of her right to dower in the estate of her deceased husband, she expressly alleges in her answer, that she did not know she was entitled to dower, and was wholly ignorant of the law upon that subject; consequently there is no foundation for saying that she is equitably barred from asserting her legal right to dower in the lands of the testator. Let the judgment of the Court below be affirmed.