McHAN, executor, *et al. v.* McHAN.

No. 6967.   July 19, 1929.

*William Butt,* for plaintiffs in error.

*Morris, Hawkins & Wallace,* contra.

BECK, P. J.   Laura McHan, as the widow of J. T. McHan, presented to the judge of the superior court her application for dower.   To this application R. C. McHan, executor, and others filed a demurrer and objections, which the court overruled, and the objectors excepted to that judgment.

The last will and testament of J. T. McHan reads as follows:

"Marion Co. I, J. T. McHan, make this my last will and testament.

I desire that my honest debts be paid, and a respectable monument be put at our graves at the Jarrett Grave Yard.

"Second. That as Clement, Doris, Margaret, Ora has got one thousand dollars, that Laura, J. T., Clarie, Essie, Effie, Myrtle, all get one thousand dollars each, to make them equal; and that H. D. Walter pay Effie two hundred on her one thousand dollars that he due me on board and interest. Laura McHan and J. T. McHan to have one thousand dollars for twelve-months support, and there be fifteen hundred dollars out of my estate for the schooling of J. T. Laura and J. T. to have my East Ellijay property, house and lot No. 1, known as the Ponce house and lot, and house No. 2 that Ray now lives in, and if he pays for it her to make him a deed, house and lot No. 3, also the land up the road joining the Foster lot running to the Buffing Branch. Laura, and J. T. to have the furnishing of the house, also one cow, five head of hogs, chickens. Laura McHan shall act for J. T. as I would if I were alive, and if she should die, that R. C. McHan shall act for him as I would if I were alive; and the remainder of the proceeds of my estate to be equally divided among all the heirs, and that R. C. McHan to wind up my estate as I would if I were alive, in any way he sees proper, giving himself all the time necessary to make all out of it he can, and that he be paid a reasonable sum for his services, and all the heirs to assist him in any way they can."

It appears from the record that Laura McHan is the second wife of J. T. McHan, deceased, and that there is one minor, J. T. McHan Jr., the issue of the second marriage; and the plaintiffs in error are the executor and the children of J. T. McHan by his first wife, eight in number. The demurrer to the application is based upon the contention that the applicant is not entitled to dower, for the reason that it is shown by the terms of the will that it was the "plain and manifest intention" of the testator that the bequest and legacies left to the widow should be in lieu of dower; that the applicant is called upon to elect whether she will take under the provisions of the will, or renounce them and elect to take dower out of the estate of her deceased husband; and that to permit the applicant to take dower would destroy the testamentary scheme manifested in the will by the testator. The will, after reciting that certain named children of the testator have received $1,000 each, provides that Laura McHan, the widow, and J. T. McHan Jr., the minor, and certain other heirs shall all receive $1,000 each, thus placing all of the children and the widow upon an equal foot-

ing as to these special cash bequests; and then the will provides that the testator's widow and the minor shall have $1,000 for twelve-months support, and that $1500 be paid out of his estate for the schooling of the minor. To summarize the provisions of the will, the testator provides that the widow and the minor are to have the East Ellijay property, giving a description of it, and also the furnishings of the house, and one cow and five head of hogs · and chickens; and, as the last provision in his will, he directs that the remainder of the proceeds of his estate be equally divided among all of the heirs, and names R. C. McHan as the executor, and specifically provides that he shall have all of the time necessary to dispose of the property and to realize out of it as much as possible, and that the executor shall be paid a reasonable sum for his services.

In subsection 2 of section 5249 of the Civil Code it is provided that dower may be barred: "By a provision made by deed or will, and accepted by the wife after the husband's death, expressly in lieu of dower, or where the intention of the husband is plain and manifest that it shall be in lieu of dower." Here there was no express provision made by the will that the bequests made to the wife should be in lieu of dower; and that leaves for determination the question whether, under the language of the will, "the intention of the husband is plain and manifest" that the bequests to the wife should be "in lieu of dower." To hold that it was the intention of the testator that the bequests made should be in lieu of dower, that intention must be plain and manifest. The inference from the fact that the lawmakers used the words "plain" and "manifest," words which are to a large extent synonymous, is that they intended to emphasize strongly the declaration that the intention of the testator should be manifest. In other words, that it was the intention of the husband that the bequests made should be in lieu of dower must be a necessary legal conclusion in view of all the portions of the will relating to the provisions for the wife. And when we consider the will in the present case in the light of the significance of the words in the statute, "plain and manifest," we can not say that the conclusion necessarily follows that the provision made in this will deprives the wife of her right to dower unless she renounce the provisions made for her in the will. In other words, we hold that the wife has the right to dower in this

case, and also to insist upon the provisions made in her favor by the will. In the will the wife was given certain property referred to as "my East Ellijay property." What the value of this was we do not know; but the husband sold and disposed of that property before his death and this legacy was adeemed. True, this ademption would not affect the construction of this will; because, even the ademption of a legacy, if the intention of the husband or testator was to make the legacy stand in lieu of dower, would not have the effect of changing the effect of the will. But we can look to the fact of the sale of that property by the husband, which by the terms of the will was given to the wife, as throwing light upon the question as to what his intentions actually were. And we do not think that holding that these bequests to the wife were not made in lieu of dower has the effect of destroying the testamentary scheme of the testator, and that to allow her dower would be inconsistent with and repugnant to the plain and manifest provisions of the will. While it is true that it is very rare that one will is like another, there is such similarity between the will under consideration in the present case and that under consideration in the case of *Tooke* v. *Hardeman, 7 Ga.* 20, that the discussion of the question as to whether or not the provisions in that will for the wife were meant to be accepted by her in lieu of dower is illuminating upon the question which we have for decision; and we consequently make a lengthy extract from the decision in that case, as follows:

"The right of the widow to dower in the lands of her deceased husband is a legal right, of which she can not be deprived by a testamentary disposition in her favor, unless such testamentary disposition, when taken in connection with the other provisions of the testator's will, *necessarily* be of such a character as to put her to an election, either to take the provision made for her by the will, or her dower. Without attempting to review and reconcile the numerous and conflicting decisions which are to be found in the books upon this 'greatly agitated subject,' as Ch. Kent. calls it, in Adsit *v.* Adsit (2 John. Ch. Rep. 451), we will state the rule which, in our judgment, is best sustained by principle and supported by authority. In order to put the widow to her election, the testamentary provision in her favor must be declared in *express* terms to be given in lieu of dower; or the intention of the

testator to that effect must be deduced by clear and manifest implication from the will, founded on the fact that the claim of dower would be *inconsistent* with the will, or so repugnant to its provisions as necessarily to disturb and *defeat* them. Fuller *v.* Yates, 8 Paige's Rep. 325. Adsit *v.* Adsit, 2 John. Ch. Rep. 448. Church *v.* Bull, 2 Denio's Rep. 430. French *v.* Davis, 2 Vesey Jr. 572. Strahan *v.* Sutton, 3 Vesey Jr. 249. In the case before us, the testator has not expressly declared that the provisions in his will for the benefit of his widow are given to her in lieu of dower. Will the widow's claim of dower out of the testator's estate so disturb and *defeat* the other dispositions made of his property in his will as *necessarily* and *manifestly* [to] imply that it was his intention to exclude her from her legal right of dower? The testator, by the second clause of his will, gave to his wife seven negroes absolutely. By the third clause, he devised to her a twenty-acre lot in the Town of Hayneville, to be improved and paid for out of his estate; and he also gave her his carriage and horses, and household furniture, except one bed and furniture for each of his children. By the fourth clause, he gave certain stock to his wife, then on his Dry Creek plantation. By the fifth clause he gave to his wife the one-fourth part of all the net proceeds of his estate, in money, during her widowhood, on *condition* she did not take from under the control of his executors the seven negroes which he had given her in the second clause of his will. By the 7th clause of his will, the testator directs that his wife shall be comfortably supported out of his estate, during her widowhood.

"The devise of the Hayneville lot is all the provision which the testator has actually made for the widow out of his real estate. The one-fourth part of the net proceeds of his estate, directed to be paid in money by the fifth clause of the will, is to be considered rather as a compensation for the labor of the slaves he had given her, so long as she permitted them to remain on the plantation under the control of the executor, than as a charge upon his real estate. All the testator's lands, except the Hayneville lot, he devised to his three sons, to be equally divided between them when the youngest became of age or married. The widow derives her title to the seven negroes, and to the Hayneville lot and the improvements to be made thereon, to the carriage and horses, to the household furniture at Vineville, to the one-fourth part of the

stock on the Dry Creek plantation, and to a comfortable support during her widowhood, from the *bounty* of the testator under the will. The testator had an undoubted right to make an absolute gift of this portion of his property to her; but in doing so, did he intend to bar her of her legal right to dower in his other lands? He has not so declared in his will. What disposition of the testator's other property will *necessarily be defeated* by her claim of dower, and thereby clearly manifest such an intention on his part? Not one that we can discover. The widow can take the Hayneville lot, and all the bequests made to her by the testator, and claim her dower out of the Pulaski lands, without defeating the devise of his lands to his three sons. The devise of the testator's lands to his three sons will be enjoyed by them, subject, it is true, to the widow's right of dower. The devise to the sons will be less valuable, but that constitutes no objection. Ackley *v.* Finch, 7 Cowen's Rep. 290. French *v.* Davis, 2 Vesey Jr. 581.

"The devisees of the land under the will of the testator, as well as the purchasers thereof, take it subject to the *legal incumbrance* of the widow's dower. They take the lands *cum onere;* and it does not necessarily follow, because their present enjoyment of the estate devised to them is rendered less valuable by the assertion of the widow's legal right of dower, that this disposition of the testator's estate will be *defeated,* so as to put the widow to her election, according to the rule which we have before stated. To defeat the widow's legal right of dower, by an *implied* intention of the testator to exclude her, such intention must clearly and incontrovertibly appear from the face of the will itself; the provisions of the will must be so repugnant and wholly inconsistent with her claim of dower, in the particular portion of the estate to which the claim of dower is made, as *necessarily* to imply that it was the intention of the testator to bar her of her legal right to dower. In the case before us no such repugnancy or inconsistency exists; not one of the dispositions of property made by the testator will be *defeated* by the widow's claim of dower in the lands specified in the record. The question is not what the testator might have done, had the subject of dower been in his mind at the time of making the will; but the question is, whether we can say, from the dispositions of the will, it is *impossible* that the testator did not intend she should have what he gave her by his will, and her dower, which the law

gives her. In our judgment she can take both what the testator gave her by his will, and what the law gives her, without defeating any of the dispositions of the testator's property made by it."

It seems to us that there were stronger reasons for holding that the provisions in the will under consideration in the *Tooke* case, when accepted, were to be in lieu of dower, than for such a holding in the present case; especially when we consider that in one clause of the will of Allen Tooke there was a provision in item 7 that the wife of the testator "should be supported by her executor from my estate during her widowhood in a comfortable manner." In view of the conclusion reached by this court in the *Tooke* case, and the arguments there employed to support that conclusion, we conclude that the court below properly overruled the demurrer to the application for dower. Other cases decided by this court might be cited in support of what we here rule, but they do not add force to what was said there.

*Judgment affirmed. All the Justices concur.*