Chief Justice Makshai.1.
delivered the opinion of lhe Court.
On the 9th day of September, 1S49, John, Brand died, possessed a large estate, real, personal and mixed, of which he had made a disposition by a will, dated in December, 1849. By that will he devised to his wife, Mrs. Elizabeth Brand, for her life, and in lieu of dower, his residence in Lexington, with the appurtenances and the household and kitchen furniture, also, several lots, two cows, the choice of all his stock, and sundry slaves by name, &c. In addition to which, the Will contains the following clause:
“I also give to my wife the dividends- on my three hundred and fifty shares of Northern Bank stock during her life, with power to dispose of said stock at her death among my children or grand children, in such portions as she may please, provided her will is made three months before her death, and in case said dividends do not amount to two thousand dollars a year, the Executors are directed to make up the deficiency.”'
Mrs. Brand is also empowered at her death to divide the testator’s plate among his children orgrandchildren, as she pleases. The will then proceeds to distribute the remaining estate among the testator’s living children, George and Alexander Brand and Eliza McCallister, and the children of two deceased sons, William and John Brand, limiting the estate given to Mrs. McCailister, so as to revert on her death, in case she should leave no child, except her residence, which she is authorized to devise among testator’s descendants after *371 the death of her husband, and providing for equality in the shares of the two living sons and that of William Brand’s children, and also for an equal distribution between them in the same manner, of the estate in remainder after the termination of the estates for life.
Mrs. Brand’s will.
On the 12th of September, 1849, this will was admitted to probate in the Fayette County Court, after having been on the same morning, for the first time, opened and read in presence of George and Alexander Brand, and Mrs. McCallister, and immediately after-wards also read to Mrs. Brand, the testator’s widow, who, upon understanding the inequality of the provision made for Mrs. McCallister, immediately indicated a desire to make a will herself, and caused the gentleman who had opened her husband’s will, and was still in the house, to be brought info her room, where she forthwith caused to be written by him the following will:
“In the name op God, Amen :
“I, Elizabeth Brand, widow of John Brand, deceased, being of sound mind, and disposed to devise a portion of the estate which my husband has left me, do, for that purpose, make this, my last will and testament. My beloved daughter, Eliza McCallister, may, and probably will outlive me. She is and has been a most kind and affectionate daughter, and my husband has devised to my two living sons, and one of my deceased son’s children, the chief part of his estate, and it is my desire to give to my daughter the chief part of the Bank stock, which I am authorized to dispose of by the will of my husband; Ido therefore give and bequeath unto my daughter, Eliza McCallister, three hundred shares of stock in the Northern Bank of Kentucky, a part of that devised to me by my husband.
“In testimony, &c.”
This will was duly executed and attested by three subscribing wetnesses, and was made in the presence and with the concurrence of the two sons of the testa *372 trix, devisees and executors of her husband, and who were two of the witnesses subscribing it. Mrs. Brand being, however, in a weak and precarious state of health, she, as well as others interested in her will and its object, entertained apprehensions that she might not live three months after its date. And upon being informed by her son George, who, with McCallister, had consulted counsel, that if she should die within the three months, her will might be ineffectual, she expressed a wish to effectuate it, and frequently expressed the desire that the intended benefit should be secured to her daughter. And being told that in the opinion of the counsel this might be done, he was sent for at her request, and presented an instrument of writing indorsed on the •will, of the following tenor, which was executed on the 2d of October, 1849.
“In the event of my dying within three months after the execution of the within will, there may be some difficulty as to my will standing good, to prevent which I do hereby, in the event of my dying within three months, renounce the provisions made for me in the will of my deceased husband, and claim that there shall be assigned to me out of my husband’s personal estate, the full value of the Bank stock devised to my daughter, Elizabeth H. McCallister, and I hereby give to my said daughter the value of the Bank stock in place of the Bank stock itself. If I live more than three months from the execution of my will, this provision is to have no effect.
“In testimony whereof. <fcc.”
This instrument signed and sealed by Mrs. Brand, was attested in her presence by two subscribing witnesses, and at the same time taken into the possession of the party interested in it. And the testatrix having died on the 5th day óf December, 1849, and within three months after the execution of her will, the said will and the foregoing instrument endorsed thereón, were on the day of December, 1849, offered in the *373 Fayette Comity Court and proved and admitted to record, two of the four Justices composing the Court expressing the opinion that the writing indorsed on the will was not a valid statutory renunciation of the provisions of John Brand’s will made for his wife.
The questions presented for decision»
For the purpose of settling the questions growing out of these acts of Mrs. Brand, and the interests dependent upon them, an agreed case was made up between George and Alexander Brand, devisees and executors of John Brand of the first part, the trustees of the children of William Brand, deceased of the second part, and McCallister and wife, the former having administered on Mrs. Brand’s estate, of the third -part. And upon the facts agreed, and the evidence taken under the agreement, the Circuit Coui't was called on to decide, first, whether the will of Mrs. Brand was effectual to pass the Bank stock as therein devised; second, whether the instrument indorsed on the will was a valid renunciation of the provisions of John Brand’s will by his widow, so as to entitle her to her thirds in his personal estate to the value of the 300 shares of Bank stock, and whether on the whole case Mrs. McCallister is entitled to said shares or their value. To the facts already extracted from the agreed case and from the evidence, is to be added the agreed fact, that the real estate devised by John Brand to his wife was of less value than her dower, that the slaves so devised to her were of less value than her third of the slaves, and that the personal estate bequeathed to her for life Was, even if bequeathed to her absolutely, of less value than the third part of her husband’s personal estate after pay. ment of all charges, and that no dividends on the Bank stock were paid or became due-before her death. It is further stated in the agreed case that George and Alexander Brand make no resistance to the claim of Mrs. McCallister to the 300 shares, of Bank stock or its value, and agree that to the extent of their interest of two thirds, Mrs. Brand’s disposition of it shall have full effect.
t Decision of the Circuit, Court.
mni»edVlfn Wnfe mansion house, tinu used proper* ty given 10 her herUiehusband,f wln which is a revocable am, disposing of the properly given by pieeíúdéd,d tier iis'provisionsln^ done ¡n pioper time and form.
The' Circuit Court decided that the will of Mrs; Brand was ineffectual as an execution of the power given to her, in consequence of her death within three months after its execution; and that the instrument! indorsed upon it was also ineffectual as h renunciation of the provisions of John Brand’s will in favor of his wife, and gave no right to Mrs. McCallister to have the Bank stock or its value.
In this Court, to which McCallister and wife have appealed, the question as to the efficacy of Mrs. Brand’s will has not been urged, and the whole case has been placed in argument upon the question of the validity and effect of the instrument indorsed on the will, and whether it is or is not to be regarded under the statute, as a renunciation.entitling the widow to her thirds, and enabling her to dispose of the same or any part there-. of.
It is indeed contended that,independently of the intrinsic character of the instrument, Mrs, Brand had by making the will in execution of the power given by her ° * 1 ° J husband, made a conclusive election to abide, by his will. .And this and other acts .are relied on as precluding her from renouncing the provision made for her and claiming against the will. But the will, besides , . , , . , , , , being made under circumstances which might authorize-a retraction, being in its own nature and'by law arevocable act, could not be conclusive, and it Was as much in her power to revoke it by renouncing the provision _ , . .... ‘ , , lor her under which it was made, as'by a new will or other instrument of revocation. And as to other facts relied on, viz: her residing in the mansion house and using whatever the executors left on the premises in the accustomed mannei’, we do not perceive that she-exercised or claimed any right inconsistent with the-right or fact of renunciation, or which- she might not have exercised if her husband had died intestate. Even the- two cows which are particularly referred to as being held under the will, were left for the use of her family by the executors, and there is not the slightest evidence *375 that she selected them from the whole of the testator’s stock as she had a right to have done under his will, or that she selected them even from among the three which were in use at the testator’s death, or that the two were left with any particular reference to the clause of the will upon that, subject. A widow is surely allowed to derive from the estate of her husband, according to its circumstances and the discretion of the executor, suitable means of support, during the time allowed for her election to abide by his will or betake herself to the provision made for her bylaw, and while her ultimate right to one or the other maybe in suspense. - And the mere fact that she lives upon the estate as she might do either under the will, or if there were no will, cannot affect her right of renunciation, which being absolute if made within the terms prescribed by the statute, Can only be defeated, if at all, by some act amounting to an estoppel, or to such appropriation of property as precludes its restoration, and as could only be made by virtue of the will, and could not properly be regarded as mere matter of charge or account when her right is ultimately fixed by renunciation or by failure to renounce.
The motives of a widow lor renouncing the pro vision made for her by her h-s-band in his will, is not a proper subi'ct of inquiry, end does not influence the right.
It is further contended that as it appears in this case that Mrs. Brand was not dissatisfied with her husband’s will on her own account, or on account of the provision made for herself, but only with the provision made for her daughter, her attempted renunciation is not within the letter or spirit of the statute, which authorizes a renunciation only in case the widow be dissatisfied with the provision made for her by her husband’s will. And it is argued that however formal orsufficient the renunciation might be in its own terms, it could not be effectual because it is not made in a case in which it is authorized by the statute. But although the statute (24th see. of the act of 1797, concerning wills, distributions, &c., Stat. Law 1544,) does enact “that when any widow shall be dissatisfied with thé provision’made for her by her husband’s will, she may, &c.,” declare that she will not take the provision made for her,' &e., we are'' *376 not prepared to admit that this general statement of the basis of her renunciation was intended- or should be construed to make either the right or the effect of renouncing, in any degree dependent upon the motive or cause of its exercise, or of the dissatisfaction which may-produce it, or to open any enquiry on that point. And even if this were admitted it would not follow and cannot be conceded, that the dissatisfaction which would authorize a renunciation under the statute, must be a dissatisfaction with the provision for her, on the ground of its insufficiency for her personal support, either absolutely or with reference to the magnitude of the whole estate. On the contrary, if the will gives her for life the use and income of her husband’s whole estate amply sufficient for her support and so deemed by her, she may still be dissatisfied with the provision because it is not so advantageous as that which the law makes in case of intestacy or renunciation, or because in limiting her power over every part of the estate to her own life, it deprives her of the power of benefiting others after her death, as she might do under the provision made for her by law, or because, though a power of disposing of a portion of the property after her death is given, she may think too small an amount of property is thus placed at her disposal, or because, though satisfied as to the amount of property subjected to the power, it is in some other particular so restricted as to the persons to be benefited by it, or as to the manner or time of its exercise as not to suit her purpose or not to accord with her feelings.
If in order to authorize a renunciation which will entitle her to the provision made by law, the widow must be dissatisfied with the testamentary provision as a provision for herself personally, then if her husband gave her his whole estate for life, she could not renounce it and betake herself to the legal provision. And as she might unquestionably renounce such a pro-' vision, though satisfactory as a provision for herself personally during life, merely because it gave no power of *377 disposing of any part of the estate at her death, so she might renounce any smaller provision for life though so far satisfactory, either because it contained no power of future disposition or because that which it did contain was not satisfactory.
Now although Mrs. Brand was at all times entirely satisfied with the provision made, for her personal support and comfort during life, notwithstanding its being much smaller than she might have claimed under the law, and although she may have been satisfied with the power of disposition given to her, while she supposed the restriction placed upon it would not actually defeat it, yet it is certain that when she began to realize the probability that in consequence of the restriction the power would be wholly nugatory, and her attempt to exercise it, though made at the earliest opportunity wholly ineffectual, she became dissatisfied with the restriction. This is manifest not only from the instrument indorsed upon her will, but by other direct testimony taken in the case, from which it appears that although satisfied in other respects she was dissatisfied with this restriction, and that although she felt great repugnance at the idea of breaking her husband’s will as it is called, she was willing not only to execute the instrument referred to, but to do whatever else was necessary to effectuate the provision which she had attempted to make for her daughter under the power given to her by the will of her husband, and as she had some reason to suppose in accordance with what he himselfwould have done if he had had time to alter his will. As she might most unquestionably, if the will had given her no power of future disposition, have renounced its provisions for that single reason, so if the power actually given was inadequate to meet her wishes or so deemed by her, that was equally a proper and sufficient cause for renunciation. And as a renunciation on the ground that the will gave no such power, could not be invalidated by the fact however shown, that the power was desired in the particular case *378 for the express purpose of making a disposition different from" that made by the husband’s will, that is because the widow was not satisfied with the provision made for other persons; so a renunciation on the ground that the power given was so restricted as probably to defeat its exercise cannot bo invalidated by the fact, though it were expressly stated in the renunciation itself, that the power was desired and was intended or attempted to be exercised for the purpose and with the effect of changing or equalizing the disposition of the husband’s property as made by his will among other-persons than the widow, and that she was dissatisfied with the restriction placed upon the power because it might prevent the accomplishment of this purpose through the exercise of the power. As the absence of all power of future disposition may be such a defect in the provision for the widow, as will authorize and justify her renunciation of the testamentary and resort to the legal provision, though her dissatisfaction with the testamentary provision for withholding the power proceeds entirely from dissatisfaction with other parts of the will, so may she justly and effectually renounce, though her dissatisfaction with the power actually contained in the provision for her, proceed wholly from dissatisfaction with other parts of her husband’s will, and from the insufficiency, actual or supposed, of the power as given to enable her to remedy what she conceives to be deficiencies or injustice in those other parts of the will. If there be no power of future disposition, she may consider the provision made for her as being deficient for the want of such power, or if such power be given she may consider the provision deficient because of the restriction placed upon the power. If she may object, for the want of all power, she may object for the want of sufficient power, that is, she may object to ttie nature and extent of the power given.
v She may renounce as well ioi wliat she may consider a deprivation of power Jo dispose of what is given, as a defect in the provision made for her own supportand comfort.
*378 And this bring us to the proposition which we think. cannot be denied, that the statute in speaking of the provision made for the widow by her husband’s will, *379 contemplates not only such provision as he may make for her physical support and comfort, but such also as he may make for the gratification of her wishes and her affections, and therefore whatever he may give her either of interest or of power in his estate. Whatever of interest and power the husband gives to his wife byf will, is the provision made for her, and so far as slaves and personalty are concerned it is supposed to be in lieu of the provision which the law itself makes for her' in case he makes none, and of which he cannot deprive her except by making such provision for her as shall be satisfactory to herself. She may therefore comparé whatever of right or privilege of present possession and enjoyment and of future dominion and disposition she may derive from the will, with the property, rights and privileges which the law would give her in-case of intestacy or renunciation. And she is at perfect liberty to take the one or the other without question or accountability as to the grounds of her decision, provided she make known her election to renounce the will in the manner and within the time prescribed by law. She may renounce because a particular slave or even horse is given or is not given to her by the will, and may she not renounce because the power of disposition given to her by the will, and to which she looked as - enabling her at once to gratify her affections and her sense of justice is subject to a restriction which in an event found to be probable renders it ineffectual and virtually annuls it? We regard this power of disposition, especially when annexed as in this case to an estate for life in the same property, as part of the provision made for the widow, and inseparable from it. It may be regarded too as a thing of value, not in money, but as affording mental gratification and enjoyment, as a bond between a mother and her children as an evi- ' dence of the husband’s confidence in his wife; and asa means of enabling her to carry out her views of justice, or to reward filial affection and duty. It was evidently in this light that Mrs. Brand considered and valued the *380 power, and it was doubtless under the same views that it was conferred upon her by her husband. And it was only in view of its being rendered nugatory without any default on her part, and by an event wholly beyond her control, and after attempting to exercise the power at the earliest moment and so as to make it effectual according to its own terms, that apprehending from the feeble state of her health that her death might occur within the three months so as to render her attempted execution of the power by will ineffectual, she resorted to a renunciation of the provision made for her by her husband’s will, as a means of effectuating the provision which she had attempted to make under the power therein conferred, upon her. We are satisfied that this was a sufficient ground for renouncing the provision made for Mrs. Brand by the will of her husband, and we come to the question whether the instrument of renunciation is sufficient under the statute.
If Mrs. Brand had been satisfied with the distribution of her husband’s property among his children', as made by his will, she might never have attempted to exercise the power given to her, or at any rate would not probably have exercised it as she attempted to do by her will. And it may be assumed that if she had been entirely satisfied that her will would take effect as an .execution of the power, she would not have attempted or desired to renounce the provision for her in her husband’s will. As it was to meet the apprehended event of her premature death within three months, whereby her will, as an execution of the power, might be defeated, that she was willing to renounce, the renunciation was made in. reference to that event, and was intended to be effectual or ineffectual as her death might happen before or after the expiration of the three months ; or, in other wofds, the renunciation was intended to be binding and operative, if by her death within three months, her will in execution of the power should become ineffectual, but the renunciation was to become inoperative if by her surviving the expiration *381 of the three months, her will should become an effectual execution of power. The event of her death within the three months or afterwards, is made the condition on which the efficacy or inefEcacjr of t.he renunciation is to depend, because the efficacy or inefficacy of her will under the power, was dependent on the same'contingencv. If the will could take effect, the renunciation was to be inoperative; if the will could not take-effect, the denunciation was to be operative. And as the event by which this was to be determined, must necessarily occur one way or the other, at or before the expiration of three months and three days from the death of her husband, so as to determine whether there was or was not a peremptory 1 enunciation, the instrument relied on as a renunciation must, if otherwise valid and sufficient, be regarded as a renunciation within the period of one year prescribed for it by the statute.
A conditional re nunciution by a widow of the provision made for her by her husband's will made in writing and at tested, which is to take effect within the time allowed by statute to make the renun ci a ti on held to be valid, though the widow die before it be proved and recorded.
But it is contended that the renunciation, to be'effectual under the statute, and to secure to the widow the legal rights consequent -upon it, must be absolute and peremptory, and to take effect immediately, and not at a future time nor upon condition, and especially not upon the death of the widow-herself, either generally or within a specified period; and that wdren the provision to be renounced is for her life only, a renunciation to take effect at her death, would be an absurdity and a nullity, because there is then nothing to renounce, and no cause or ground for the provision which the law makes in case of renunciation; and furthermore, that as such renunciation does not take'effect until the death of the widow, no right consequent upon it can vest in-her during her life, and she has nothing which can be transmitted to her representatives.
The 24th section of the act of 1797: (Statute Law, 1544) to which this argument refers, enacts “that when any widow shall not be satisfied with the provision made for her by the will of her husband she may, within one year from the time of his death, before the Court *382 having jurisdiction of the probate of his will-as aforesaid, or by deed executed in the presence of two or more credible witnesses, declare that she will not .take or accept the provision made for her by such will or any part thereof, and renounce all benefit which she might claim by the same will, and thereupon such widow sha I be entitled to one-third of the slaves of which her husband died possessed, which she shall hold during her life, &c.”
“And she shall moreover be entitled'to such share of his personal estate as if he had died intestate; but every .widow not making a declaration within the time-aforesaid, shall have no more of her husband’s slaves and personal estate than is given to her by his will.”
And by the 28th section of the same act: (Stat. Law, 660) the widow’s portion in the slaves is one-third for her life, and in the personalty one-third absolutely, in case the husband dies intestate, leaving children.
It has been decided by this Court in’the case of Cumming's Ex’r. vs Daniel and Wife: (9 Dana, 361) that under the joint operation of these two sections, a widow whose husband has devised away his whole estate without making any provision whatever for her, may, without renunciation, there being nothing to renounce, claim and recover the portion of his property to which she would be entitled in case of his intestacy, or of a provision for her which she renounces. In conformity with this decision, and with the rights of the wife under the ancient laws, which secure to her absolutely one-third of the personalty at the death of 'her husband ; and under the two sections above referred to, which, being contained in an act professing to reduce into one the several acts “concerning wills, the distribution of intestate’s estates, and the duties of executors and administrators,” is presumed to embody so much of their principles as remains in force, it may be assumed that as to. one-third of his slaves and personalty, the husband has not the absolute right of disposition by will, but must make a provision satisfactory to his wife; w7ho *383 may therefore be considered as having such a right or interest in the slaves and personalty of which her husband dies possessed, as she cannot be deprived of by his will against her consent. Whence it follows that her right to the legal provision does not begin with or owe its origin to the will of her husband or to her renunciation of the testamentary provision made for her by him, but though contingent, begins at his death, and is coeval with her right under his will. Arid it is because she has these two rights, presumably inconsistent, and which ought not both to be exercised, that she is required to elect between them. From considerations of obvious convenience, and to avoid unnecessary confusion in the management and distribution of the estate, the widow is required to make her election within one one year, and in the manner prescribed, by which it is to be certainly and unquestionably demonstrated. But she has that full period for weighing all the considerations, which should or can affect her choice; and she is under the law as free to adhere to the one right as to the other; the only distinction being that either on the presumption that her husband’s provision for her is fair and adequate, or from deference to his right over his own property, or on account of the inconvenience of distributing the dispositions made by him, she must take the provision made for her by the will, unless, she renounce it in the time and manner prescribed. And thus her right to the legal provision is made contingent upon her renunciation of the other.
As the statute did not intend to defeat or unnecessarily to tramel the widow’s right ¡of election between the will and the law, nor to prevent a fair and voluntary exercise of it, but intended only to place it under such restrictions as convenience and propriety required, there is no reason for carrying its provisions, by construction, beyond their plain and obvious meaning, or for requiring in the acts done under it a stricter compliance with its letter than in other cases. And as it implies the existence of two conflicting rights, without which there *384 would be no occasion for election between them, it must be assumed that .neither was intended to be defeated or disparaged, except by election, or byfailure to electas required within one year; and that during that time the two alternate rights, continue, unless one of them is sooner terminated by election, or by some act or event which, rendering, election impossible, terminates the right to the legal provision, and makes the testamentary provision imperative.
The act of election or renunciation required by the statute is a declaration by the widow in open Court, or by deed duly attested that she will not take or accept the provision, &c., and renounce all benefit, &c. But although, many words are used in describing the declaration, the sense and effect of all are comprised in the words, “I do hereby renounce the provision made for me by my husband’s will;” which must be deemed equivalent to a declaration in the very words of the statute. Then as the declaration, whether made in Court or by deed, is to be the personal act óf the widow and must be made during her life, her death without having made it, puts an end to the right of election, and reduces her interest as widow to such right as grows out of the testamentary provision, though she should die at any point of time before the expiration of the year. But if the act to be done by her be done before her death may it not be proved and thus made fully effectual after her death? As to the renunciation in open Court, this question cannot arise, because the personal act of renunciation, must be at once stated on the record, and admits of no further proof. But the renunciation by' deed must be proved after it is made and is for this very purpose required to be attested. And even if it be true as contended, that it is of no effect until proved and noted or recorded in Court, it would be against reason and analogy to say 'that when she had done the only act required to be' done by her, and in the mode prescribed, the mere-fact of her death before it is or perhaps can be proved in Court, should prevent its being proved and *385 thus destroy its efficacy. The statute in terms requires only a declaration by deed attested. It does not even say that the deed shall be recorded, and if that is to be implied, still, as it gives to the last moment of the year to execute the deed with effect, it cannot be implied that it requires the deed at all events to be proved and recorded before the end of the year. In the ordinary case of deeds bjfemes covert, which take effect only by being recorded as prescribed by law, and in all cases where under the former acts of registration in this State» recording' was required to make the deed effectual, whether for all purposes or for any particular purpose, it has been invariably held that the death of the party does not prevent the recording of the instrument, or even the proof of it except in the case of femes covert, and that the deed when duly recorded upon proper proof becomes effectual from its date, or in case of a feme covert from the date of her acknowledgment which authorizes the recording.
The proof and recording of the deed of renunciation not being acts of the maker of the deed nor within her control, need not take place during her life. If they must take place within the year from her husband’s death, that requisition was complied with In this case. And if the proof and recording be necessary'to give effect to the deed as a renunciation entitling the widow io her thirds, it follows that a deed of renunciation may depend for its effect as such upon a future event, viz: the proof and recording of it, which must take place after its execution, and which if it must take place within the year allowed for her election, may yet take place after her own death. Indeed, according to this construction of the statute, the renunciation by deed however absolute in its terms, must until recorded, be contingent as to its effect, since if not proved and recorded within the year it is no renunciation. What then if it be proved and recorded within the year, but after the death of the widow ? We answer that under anv admissible construction of the statute, the deed irr *386 that case must become as effectual from its date as a renunciation of the testamentary provision, and an election of the legal provision, as if it had been openly made in Court at the date of the deed, and that the widow’s right to the testamentary provision having been abandoned, her right to the legal provision, though contingent upon the proof and recording of the deed within the year, becomes free from the contingency of her not renouncing the will, and therefore free from the contingency of her dying before such renunciation, and that the right thus ascertained (to'the legal provision out of the personalty,) being so far as the interest to which it relates, is not limited to her life, a transmissible right is not defeated by her death, but passes to her representatives, and that although it is still subject to be lost by the failure to prove and record the renunciation in time, it becomes absolute upon that being done. By the express words of the statute, the widow, upon her executing the deed of renunciation within the year, becomes entitled to such share of her husband’s personal estate as if he had died intestate. And if in view of ■its general objects, her title is still subject to the condition of the deed being proved and recorded within the year, which we need not decide, this is evidently a condition subsequent to the act of election or renunciation, which does not prevent the transmission of the right, though it may ultimately destroy it.
Whether it be ne cessary to record the renunciation of a widow of the provisions of her husband’s will at all, or within the year — not decided.
But although we need not and do not decide that the statute requires the recording of the deed within the year, we assume that construction for further illustration of the subject. And supposing a deed of renunciation absolute in its own terms, but by construction of the statute dependent for its efficacy upon a future ■event, as the recording of the deed, we perceive at once the distinction between the act of renunciation so far as it is the act mental and physical of the renunciant, and any subsequent act or fact in which she need not participate, but on which the effect of her previous act may depend. What then if the deed instead of being *387 absolute, should read as follows: “I do, hereby, on condition (or in the event) of this deed being recorded in the proper office within one year from the day of my husband’s death, renounce the provision made for me by his will, and claim the legal provision out of his estate, &c.” Would not this, though a conditional renunciation, be valid, and would it not become effectual upon being recorded as required, though subject to be defeated if not so recorded ? Under the assumed construction of the statute, the condition expressed in the deed would be no more than would be implied as being annexed by the statute, and it certainly could not invalidate the deed. And we think it clear that although the renunciation would thus be expressly conditional, yet as the condition would not require or imply any further act or consent or co-operation on the part of the renunciant, in order either to make the renunciation complete, or to give it full and final effect, but is extrinsic and independent of her future concurrence, her act would be complete and final as a renunciation by her, subject only to be defeated or to become absolute by the happening or not happening of the event referred to. But'suppose the condition expressed in the deed, were that it should be recorded within three months from the husband’s death, which certainly is not required by the statute, can there be a doubt that the instrument would be-as valid in this form as in the other; and that if recorded within the prescribed period, it would be as effectual to all intents and purposes as if it had been unconditional? That this would be so, is, in our opinion, entirely certain, because the condition is not inconsistent with any object or requisition of the statute, and because when complied with, the renunciation becomes absolute within the period prescribed for renunciation, and thus comes up to every object and requisition of the law. As the act and deed of the renunciant, and for the purposes therein mentioned, such an instrument is complete and final from the moment of its execution and delivery. It is from that, moment a renunciation,. *388 though subject to a condition. It is from its date obligatory according to its terms, that is, it is a binding renunciation if the condition be complied with, and loses its obligatory force only in case of non-compliance. Every act, physical and mental, which is necessary on the part of the widow to make a valid and absolute renunciation, is performed in the execution of the deed, and is evidenced by its contents. She has already consented that the renunciation shall be absolute on. the performance of the condition, and no further act or concurrence on her part, is required to make it. so. Her will is bound until the last moment at which the conditiori may be performed, and is only released by its. nonperformance.. It is therefore, in the very nature of the thing immaterial, whether at the time of its performance, she is capable, or incapable of concurring in it, or of then making an election or renunciation. She has already renounced if the condition be performed. And as in the case of any other act complete in itself, but subject to a future condition by which it may be defeated or made absolute, it must operate according to its terms, though by death or insanity or any other intervening cause she is rendered incapable of then performing or concurring in the condition or of consenting to its effect,. A renunciation conditional in its terms, is no more revocable than if it were unconditional. In either case, the instrument, if retained in the possession or power of the maker, may be destroyed or withheld from record or proof, and thus in effect revoked. But in this case the instrument was not retained by the renunciant, but was delivered to and remained in the possession of the party interested in its efficacy, and there was no attempt to revoke it.
Now it is true, that the declaration or rennuciation as indicated by the statute, is absolute in its terms and refers to no.córidítion, but we do not admit, and suppose it -would not be contended that the very words of the statute without omission or addition, must be used, and that none other will suffice. We understand the time *389 of the renunciation, and not its mere words, to be important in view of the statute. Nor do we suppose that there could be any dispute as 1o the sufficiency’of a renunciation expressly on condition or in the event of the deed being presented or recorded in Court, within three or six months from the death of the husband. And upon this assumption it seems impossible to discriminate between such a condition and any other which is equally within the object and requisitions of the statute. Conceding then, as we are inclined to do, that the statute requires that there shall be an absolute renunciation within the year, yet as this requisition does not imply that the renunciation must be in its own terms absolute from its date, but admits of its being conditional, it would seem to be fully complied with if the condition be of such a nature that the renunciation must become absolute or void within the year during which the widow has the absolute right of either renouncing or adhering to the lyiU. Nor do we perceive that in making her own death within the prescribed period, the condition of her renunciation, any object of the statute, is defeated or contravened. Her right to renounce within the year is absolute, and if she exercises it, her subsequent death within the year cannot defeat it. She may renounce the testamentary provision for the single reason that she does not expect to live to enjoy it, or that she is certain that she will not. She may within the year, renounce at the very last hour of her life, if she then have mental capacity, and because she believes she will not live an hour. And she may do this whether the testamentary provision be for her life only, or in fee. The nature of the provision affects neither the right nor the form of renunciation; and the statute makes no comparison between the testamentary and the legal provision, fcut leaves the widow to maké it for herself, and allows her, if she will, to elect between them solely on the ground of this comparison, and al. though her estimate and consequent choice may be determined wholly by her apprehension of speedy death. *390 The efficacy of her renunciation made within the year, could not be impugned, though it should state that expecting to die in a few days, and thus to lose the enjoyment of the provision made for her by her husband, she therefore renounces it, &e.
.A widow may make her dea<h the condition on which the t enunciation of the pro vision made for her by the wilt of her husband shall become abs ilute, i] it happen within the year given íor a renunciation.
*390 Then why may she not deliver the deed of absolute renunciation as an escrow to be presented for proof and record only in the event of her death within a certain period, and within the year? or why might she not make her death within a certain period, not exceeding the year, the express condition of her renunciation? It is said that when the testamentary provision is for life only, the widow having enjoyed it, has nothing to renounce at her death, and that therefore a renunciation dependent on the condition of her dying even within the year, cannot be within the intention of the statute, and is entitled to no effect. We admit that upon first view, this objection struck us as entitled to great force. But upon more mature consideration, we are of opinion that it is not well founded, because in the first place, as already said, the right of election or. renunciation depends upon no comparison of values, but such as the widow herself may ch.oose to make; and because in the second place, it is her election within the year that'determines whether her previous support, derived from the estate, is to be charged as a part of the testamentary or legal provision. Suppose the husband were to make provision for his wife for one year only, or that such would be the constructive effect of his will; the right of renunciation would undoubtedlj’ exist under the statute, and might be exercised on the very last day of the year. And yet nothing appreciable might remain of the testamentary provision if, during the suspense of her election, and on account of it, she is to be charged with the consumption and exhaustion of the testamentary provision. Such, however, is not, in our opinion, either the letter or spirit of the statute. It allows her one year freely to make her choice. And it does not intend, either to compel her to a speedy and *391 unadvised, election, by turning her out of the estate in which she has, in any event, a right to participate, or to conclude her right of renunciation within the year, by any equivalent of hers. The effect of the statute is that during the year, unless within that period the right of election is lost or conclusively exercised, the right of the widow to take under the testamentary or under the legal provision is in suspense, and that when the election is effectually made, or the right to make it is lost by casualty or by lapse of time, her acts are construed to be under and in accordance with that right» which is ultimately established. In the case supposed, therefore, of a testamentary provision for one’year only, her renunciation on the last day of her privilege is a renunciation of the whole provision, and places her from the beginning on the same footing as if she had renounced on the day of her husband’s death. She may, indeed, have postponed the renunciation from deference to her husband’s will, and under the belief that she would not survive the year, and would not require any further provision, and she might resort to it at least as a measure necessary to her support. But with her motives the statute has nothing to do. It leaves her free to speculate upon events, and to choose according to circumstances. If she renounces, she takes nothing under the will, though she may have derived her subsistence from the estate. If, therefore, the testamentary provision be for life only, her renunciation rejects it from the beginning, and rejects the whole and every part of it; and she may thus reject it at any time during the year, unless by some unequivocal act, she had precluded herself from so doing. She has, therefore, something to renounce, even of a provision for life, at the very moment of her death. And so far is it from its being requisite in order to authorize or justify a renunciation, that the thing renounced should equal or approach, the value of that which is sought by the renunciation, that the comparative want of value of the *392 thing renounced, is a most proper ground for its renunciation.
For further illustration, let it be supposed that a husband, having a clear income of $30,000 a year, gives to his wife by his will $500 or $1000 a year, and that living in her accustomed manner she finds, at the end of eleven months, that she requires $5000 a year; she may undoubtedly renounce, although she may have received from the executor either the exact amount, or several times the amount which would be due under the will^ and as much perhaps as she would, upon reasonable estimate, be entitled to receive under the testamentary provision during her whole life. And so, whatever the pi'ovision may be, if she finds before a conclusive election, that it does not answer her purposes as well as the legal provision she may renounce. If the testamentary provision were, by its terms, subject to a reduction of one-half upon the happening of a certain event within the year, the widow might unquestionably renounce upon the happening of the contingency, and it would seem strange if she could not make a previous renunciation dependent on the same event.
It is argued, however, that if the renunciation may be conditional on the death of the widow, though within the year, it will be giving her an unfair advantage, by securing the legal provision if she should die within the time, and leaving her entitled to the testamentary provision if she should not so die. But what would be her condition if no such conditional renunciation were madel We have already seen that she might, in the very hour of her death, and on the last day of her privilege, renounce the testamentary provision for the single reason that she would not, as she believed, live to enjoy it, and therefore preferred the legal provision, which she might transmit to others. And if, from this motive, she was willing to make a conditional renunciation at an early period of the year, she would probably, if none such had been made, or if it had become void by her surviving the period referred to in it, re *393 nounce absolutely, if before the end of the year, she believe that her life would soon be cut off, and should therefore consider it advantageous, or in any respect desirable to secure the legal provision. But then there would be a chance that she might be taken off suddenly without having an opportunity of making the absolute renunciation, and a renunciation made at an early period on condition of her dying within the year, would entirely cut off this chance, that is, it would prevent her and those dependent on her, from losing, and others from gaining by a premature casualty which, if not pro. vided against, would deprive her at once of the testamentary and the legal provision. We are not sure that such a precaution, limited to the period prescribed by the statute for an absolute renunciation, is either inconsistent with its spirit, or liable to the charge of unfairness, or of taking any undue advantage. But this objection would apply to a conditional renunciation» though the condition should be other than the death of the widow, since if such a renunciation be effectual, it saves the right during the interval allowed for the performance of the condition, or until it is performed, though the widow should die in the meantime.
We repeat, however, what has already been shown, that in this case the conditional renunciation was resort-, ed to, for the purpose of effectuating substantially a part of the testamentary provision, which was liable to be defeated from its form, by the casualty of Mrs. Brand’s death within a certain period, and that it was not intended to displace any specific devise, but to effect what was not even intended to form part of the residuum. That Mr. Brand intended and expected that his widow would execute the power of disposition given to her by his will, there is no reason to doubt. And as she attempted to exercise it at the earliest possible opportunity, so as to comply with the condition annexed, and only renounced the will in view of an event which would defeat the attempt, without any default on her part, and .in a manner which was probably not antici *394 pated by her- husband in making his ,will, and which would therefore probably operate contrary to his intention, her conditional renunciation implies neither selfishness nor unfairness, nor want of deference to her husband’s will, or to his memory; but was an attempt to carry out, in substance, the power given to her by his will, but which, in the form it was given, was liable to -be defeated by her early death.
These considerations, however, may not make this case an exception, and we have considered the objections to the renunciation on general grounds, arising under the statute, and applicable to all cases. But it is material to remark that the condition in this case being definite and distinct, and suceptible of easy and precise proof, and being moreover the same on which, by her husband’s will, the validity of her own was to be determined, is free from objection on the score of vagueness and uncertainty- And we again ask the question, why may not -a renunciation be made conditional, on the event of the widow’s death within a certain period, not exceeding her privilege, as well as upon any other event? It is said that in such a case there is no renunciation until her death; when she is unable to renounce, because she is dead, and when, for the same reason, no right consequent upon renunciation can vest in her, and none, therefore can be transmitted by her. But these objections apply with .'no more foi’ce to a case where the death of the renunciant forms the condition on which the renunciation is to be effectual, than to a case where it depends upon some other event, as the recording of the deed within three months, and the widoyv dies within the three months, and before the deed is recorded.
The condition being wholly independent of the act or consent, except as evidenced by the deed, her life or death, her ability or disability, to act or -consent or concur in the performance of the condition or in its-consequences are alike immaterial, unless by the terms of the-condition she is required to do some further act.
And as to the vesting and transmission of an interest *395 m consequence of the renunciation We.have already expressed the_opinion that the widow’s right v_ the portion of her husband’s estate assigned to hei' bv law independently of his will, does not originate either in his will or in her renunciation of it, but exists from ■ his death .as a contingent right to be made absolute by her renunciation of his will. That the effect of her absolute renunciation is not to vest in her a new right, but only to confirm or.render absolute a pre-existing one ; and that when by a conditional renunciation which may become absolute within the statutory period, she has done the only personal'act which was necessary to [a renunciation of the testamentary provision, and has elected to have the legal provision, her right tojso much of that provision as does not by law terminate with her life, being freed from the contingency of being lost by her failure to perform the personal act necessary to a renunciation of the will, and being thenceforth a right contingent simply5 upon the happening of the condition which is to make the renunciation absolute,’was before the happening of the condition transmissible as other contingent right, belonging to a particular individual, and passed upon her death to her representative to become absolute or be extinguished according to the event.
The effect of a renunciation by a widow, of a provision made for her by her husband, is not to create a right, but to confirm & renderabsolme a pre-existingright given to her by law.
Therenunciation by a widow of (he provisions of her husband’s will, is substantially a transfer or surrender of her right to the heiis or devisees of her husband, & in consideration of which she becomes entitled to the provisions made by law for her — and may be a renunciation upon-condition.
The renunciation of a testamentary provision by a widow is in effect and substantially a transfer or surrender of her right in it, to the heirs or devisees of her husband in consideration of which she becomes absolutely entitled to the legal provision from them. Why, then, may it not, like every other transfer of aright, be made on condition, and on the same condition, within the limitation prescribed by law as may be applicable to any other transfer of property or of a right? It is said that it must be by deed, and therefore cannot be upon a condition to be proved by parol. But a conveyance of land or the emancipation of a slave, unless by will, must be by deed, and, yet the deed ' or will may express a condition on which its effect as a conveyance of land or *396 an emancipation of a slave may depend; and although the happening of the condition is extrinsic and may be proved by parol, the efficient act is by deed and the title passes by the deed, though upon condition. And it is certain that in these cases, not only is the efficacy of the deed not affected by the death of the grantor before the happening of the condition, where no further act of a personal nature is to be done by him, but his death within a particular period may be the sole condition on which it is to become either operative or absolute. In these cases too the grantor having the right to make or not to make the grant, exercises his right of election in executing the deed. And there is no more necessity that a renunciation should, because it is an election, be absolute and final at the moment of the execution of the deed by which it is evidenced, than that the other acts referred to, should be thus absolute and final in their effects from the moment of their execution. Nor can this necessity of immediate and absolute efficacy for its ultimate purposes be deduced from the definition of a renunciation as a surrender, a yielding up &c. For a surrender may unquestionably be upon condition: (2 Thomas's Coke, 555, 218, and 2 Strange 1201.) The distinction has been already pointed out between the act of grantor surrender, and its effect. And we will state a further and obvious distinction between the transfer or surrender of a right by manual tradition of the thing to which it relates, which admits of a condition subsequent and seems to be inconsistent with a condition precedent, and a transfer or surrender by deed, which operating by words only, may be modified by words to answer the intent of the parties, and may be'subjected to a condition precedent-as well as to a condition subsequent and being a conditional transfer implies a conditional loss and acquisition of right.
®le renuriolátíon by a widow of the provisions made for her by the will of lifer husband, may be upon condition tliatshe die within a period less than one year from the death of her hnsbind, and a transfer made bv her will be • effectual to pass property which become her properly by the act of renunciation.
*396 But the-renunciation is not merely a surrender. It is an act for which the renunciant is to receive and by which she entitles herself to receive a consideration in exchange 'for her surrender, And if what she is to re *397 ceive be a new right, originating in her act, instead of the confirmation or enlargement of a pre-existing one, we do not perceive why the conditional surrender of her right in possession whereby its future continuance becomes immediately contingent upon a particular event, should not vest in her a like contingent interest in the right which forms the consideration of her surrender and which is to become absolute upon the happening of the same event-that. is to make her surrender absolute. If A andB, should mutually execute the same deed importing a present exchange of their-respective farms, but expressed to be on condition or in the event of the return of A’s son from abroad within three months until which time the possession to remain as before, we apprehend that each would from the date of the deed have a contingent interest in the farm of the other, to become absolute or to cease on the happening of the contingency one way or the other,.and that upon the death of either before the time limited, his interest in the1 farm to be received in exchange would under the modern laws of conveyancing though perhaps not under the ancient law pass by descent or devise, subject still to the original condition. And the consesequence would be the same though the death of A within three months were the condition on which the exchange was to take effect.
The widow, it is true, does not deal personally with the heirs and devisees in making her renunciation, but she deals with the law, which assumes the control of ' their interests, and promises and gives to the widow a certain portion of them, in exchange for the pqrtion which she renounces. And as in case of an absolute renunciation there is an absolute exchange of these rights, so in case of a conditional renunciation there may be said to be a conditional exchange, to become absolute by the happening of the condition on which within the prescribed period her renunciation is to become absolute. We have already seen, that although when the testamentary provision is for life, .the death of *398 the widow terminates the provision for the future, her renunciation still operates upon the past, and surrenders that, and the law makes no comparison of values. Nor can the form or effect of the renunciation depend upon the nature of the provision renounced.- Then suppose a testator should devise a certain farm to A, on condition of his releasing within-a year all claim to his farm devised.by the same will to B, we cannot doubt that a release immediately executed by A, though upon an express condition to be determined within three months, and although that condition were his own death, would suffice to create a transmissible interest in him, and in B, though contingent, on the event mentioned in the release. The law gives to the widow a certain estate absolutely, if she renounce within a year the testamentary provision; we are unable to perceive why a renunciation may not be made under the .same condition and with the same effect as in the case just supposed.
Under any view- of the subject, we do not admit that the deed of renunciation if conditional, must, be therefore regarded as revocable, or that it is not analogous to other deeds because it is unilateral and founded upon no consideration. The advantage expected from it is a consideration, and although in form unilateral, it operates to transfer a- right to others. It stands in these particulars on stronger ground than a voluntary deed of conditional emancipation, which when delivered is binding upon the grantor and in its nature irrevocable. The fact that in either case the maker of the deed might by subsequent acts create interests in others which might entitle them to question, or defeat the previous deed, does not if admitted, prove that the one any more than the other, is revocable or in any respect invalid. Each is by its execution and delivery, binding upon the maker according to its terms. And that is all that is necessary in-case of a deed of renunciation, whether it is by its terms absolute, or is to become absolute or void within the statutory period.
We aré of opinion therefore, upon the whole case, *399 that Mrs. Brand’s renunciation was valid and became effectual by her death, and that her disposition made by herof the value of the 300 shares of Northern Bank stock should be deemed good and carried out in equity.
Robinson and Johnson for appellants; Robertson, Kinkead, and Breckinridge for appellees.-
Wherefore the decree is reversed, and the cause rcmanded'for a decree in conformity .with this opinion.