CATHERINE L. COOPER

*v.*

WILLIAM J. COOPER et al.

[Filed August 11th, 1897.]

1. Under a devise of specific real property to testator's executors, "in trust, for the term of one year (providing my wife is still living and remaining my widow), to hold the same, receive all the rents, issues and profits, * * * and paying all the demands against said premises, and the profits * * * to go into and become a part of the residue of my estate, and at the end of the

said one year after my death (my wife still living and remaining my widow), then I order and direct my said executors * * * to turn the said premises over to her, to have full care and charge of said premises, paying all taxes and demands against said premises during the term of her natural life, or so long as she remains my widow, she also to receive all collectible back rents due on said premises, and at the death of my said wife, or she again marrying," &c., the gift to the widow is an estate for life, operative, in the absence of dissent, to bar her dower.

2. Where testator, after having devised a life estate in certain real property to his widow, specifically devised the residue thereof "absolutely and in fee," the widow cannot have both such life estate and dower, but must elect.

3. A power and direction to executors to sell and convey, giving a "good and sufficient deed," implies a conveyance by them free of dower, so that the widow would be required to elect.

4. The fact that testator, who had charged his entire estate with an annuity for his widow, provided by a codicil that his daughter should have the proceeds of certain property, free from such charge, shows that he did not intend that the widow should have dower in his estate.

5. A widow is not estopped to make her election to take dower instead of benefits under the will, by having accepted certain payments on account of an annuity provided, and certain articles of personalty bequeathed to her by the will of her deceased husband.

Bill for dower. Heard on pleadings and proofs.

The complainant, by her bill, asks to be endowed of all the real estate whereof her husband, John Cooper, late of the county of Camden, died seized. He died on the 18th of April, 1894, testate of a will executed on the 25th of October, 1893, with a codicil executed on the 21st of March, 1894. His estate consisted of both real and personal property of the value of nearly $100,000 each. He left three children, two sons and a daughter, by a former marriage, who are the defendants herein.

By the first item of his will he made the usual direction for the payment of his debts.

By the second item he gave to his wife, the complainant, all his household goods, lumber, garden-tools, chickens, &c., about his house and premises on Cooper street, Camden (being his homestead); also all the silverware, books, &c., that he might own at the time of his death. He also gave his wife full possession of his Cooper street residence for the term of one year

(she remaining his widow) after his death, free from any taxes whatever except water rents, which she must pay, and his executors to keep the taxes and necessary repairs to the premises paid, and keep it in good, tenantable condition; and at the end of one year he directed his executors to sell and dispose of the Cooper street premises

" and give to the purchaser or purchasers thereof good and sufficient deed or deeds in the law, * * * and the proceeds thereof to go into and become a part of the residue of my estate."

The third clause is as follows:

" I give and bequeath to my executors hereinafter named, or the successor or successors of them, my three-story frame house and grounds situate on Broadway, in the said city and county of Camden, and State of New Jersey, *in trust for the term of one year* (providing my wife is still living and remaining my widow), to hold the same, receive all the rents, issues and profits from the said Broadway premises, and paying all the demands against said premises, and the profits from said Broadway premises to go into and become a part of the residue of my estate, and at the end of the said one year after my death (my wife still living and remaining my widow), then I order and direct my said executors hereinafter named, or their successor or successors of them, *to turn the said Broadway premises over to her*, to have full care and charge of the said premises, paying all taxes and demands against said premises during the term of her natural life or so long as she remains my widow, she also to receive all collectible back rents due on the said premises, and at the death of my said wife or she again remarrying," &c.

By the fourth clause he ordered and directed his executors to set aside certain of his securities or other good-paying investments, in order to create a sum sufficient to pay his wife the sum of $2,700 yearly, payable semi-annually, for and during the term of her natural life or so long as she remains his widow.

By the eighth clause he gave, bequeathed and devised to his. two sons, H. M. C. and W. J. C., the undivided half part of the farm known as the " Cooperfield Farm," situate in Gloucester county, to be divided between them, share and share alike, " absolutely and in fee."

By the eleventh paragraph he ordered and directed his executors to sell his three houses situate on North Nineteenth

street, in the city of Philadelphia, as soon as practicable, and give "good and sufficient deed or deeds in the law to the purchaser or purchasers thereof," and divide the proceeds among his three children.

By the twelfth item he gave, bequeathed and devised the equity that he owned in the premises known as 311 North Front street, in the city of Camden, to his two sons, H. M. C. and W. J. C., "absolutely and in fee."

By the thirteenth item he gave, bequeathed and devised to his son H. M. C., "absolutely and in fee," the premises on Chestnut street, above Seventh street, in the city of Camden.

By the fourteenth clause he gave and bequeathed to his daughter, S. K. J., the house and store situate at the corner of Fifth and Stevens streets, and the house and lot on Sycamore street, during the term of her natural life, and at her death the premises to go to her children.

By the fifteenth item, using the same language, he devised a farm known as "Crystal Run Farm" to his daughter, S. K. J.

By the seventeenth section he gave, bequeathed and devised to his son W. J. C., "absolutely," the premises he owned on Wood street, Philadelphia, Pennsylvania.

By the nineteenth clause he gave to his executors full power and authority to sell and convert into cash all the rest, residue and remainder of his estate, real, personal and mixed, "and give good deed or deeds in the law," and the proceeds arising therefrom he ordered to be divided into three equal shares among his three children, "first being careful that there is a sufficient sum set aside in my estate to carry out the provisions in the fourth item" of his will.

By the twentieth item he declares that he wishes it distinctly understood, and orders and directs,

"that all the bequests in this my said will is subject to a bequest of $2,700 per annum to my wife, Catherine L. Cooper, in the fourth item of this my will, during the term of her natural life or so long as she remains my widow, and at her death or she again remarrying, the aforesaid bequests to be free of the encumbrance made in the fourth item of this my will."

By the last item of his will he appointed his two sons execu-
tors and gave them power "to give good and sufficient deed or
deeds in the law for any property they may dispose of for the
best interests of my estate."

By a codicil he revoked the devise contained in the fourteenth
item of his will, of a house and store in Camden to his daughter,
S. K. J., and ordered that the executors named in his will should
sell the house and lot, and give good deed or deeds in law to the
purchaser or purchasers thereof, and that the purchase-money
thereof is not to be subject to any legacy or claim of his wife,
Catherine L. Cooper.

Under the second item of the will, the widow remained in the
mansion-house, free of rent, for one year, and still remains
therein.  The executors, however, informed her that if she re-
mained after the expiration of the year she would be obliged to
pay rent.

The first six months' annuity was paid to her in four different
payments, beginning in May and ending in October, 1894.  At
the end of the first year—April 18th, 1895—when the second
six months' payment of the annuity became due, it was tendered
to her and she declined to accept it, and three months later—
July, 1895—this bill was filed.

The house in Broadway, which the executors were directed to
turn over to her, was occupied by a tenant, and the executors
directed the tenant to pay the rents to her that were due, and all
that accrued after the 18th of April, 1895.  The daughter of the
tenant called on the complainant for the purpose of paying her
the rent, but she declined to receive it.

She did not file any dissent under the sixteenth section of the
Dower act.

The executors delivered to her all the silverware of the testa-
tor, the same being on deposit in a safety vault.

*Mr. Samuel H. Grey,* attorney-general, and *Mr. Henry I.
Budd, Jr.,* for the complainant.

*Mr. Howard M. Cooper,* for the defendants.

PITNEY, V. C.

Three points are made by the defendants in opposition to this bill for dower.

*First.* That by the third section of the will a devise for life or during widowhood was made to the complainant of the Broadway premises, which bars her dower under the sixteenth section of the Dower act, unless she dissented therefrom within six months after the probate of the will, which she has not done.

*Second.* That the claim of dower is inconsistent with the terms of the will, and will disturb the disposition thereby made, and hence that the widow is put to her election between benefits under the will and her dower at the common law. And

*Third.* That she has already made such election by accepting bequests of personalty under the will and six months' payment of her annuity.

The first question depends upon the true construction of the third clause of the will. The complainant contends that there is no devise to her of any estate at law, either for life or during widowhood, in the Broadway premises, but that they are either devised in trust to the executors, and hence within the rule in *Vanarsdale* v. *Vanarsdale, 2 Dutch. 404,* or that the benefit taken by the widow is a mere duty of care and management of the estate, for which she is to have the net proceeds of its income.

I cannot adopt this view. The gift to the executors is expressly in trust for the term of one year, "to hold the same, receive all the rents, issues and profits and paying all the demands against the said premises, and the profits to go into and become a part of the residue" of his estate.

Now it seems to me that that language limits the gift in trust to his executors for the term of one year. Then follows this clause:

"At the end of the said one year after my death (my wife still living and remaining my widow) then I order and direct my said executors hereinafter named *to turn the said Broadway premises over to her,* to have full care and charge of said premises, during the term of her natural life or so long as she remains my widow, she also to receive all collectible back rents due on the said premises."

Then follows an order and direction to his executors to sell the same, and the proceeds to go into and become a part of the residue of his estate. The language " to have full care and charge of said premises," confirms the idea that the trust ceased at the end of one year, and it is to be observed that a continuance of the trust is not at all necessary to the power of sale.

It was admitted by the counsel of complainant that the result of the bequest was to give to the wife the beneficial use of the premises, but it was earnestly argued that such provision did not result in giving her a legal estate.

In my opinion, the direction to his executors " to turn the said Broadway premises over to her [his wife], to have full care and charge of said premises," &c., was, in effect, a gift of the premises to her for life. It put her in possession, and gave her the right to the possession and use during her natural life. And such a gift, according to all the authorities, is an estate for life. The fact that it is limited to her widowhood, does not prevent it from operating as a bar, in the absence of dissent. Such was clearly the decision of Chancellor Vroom in *Stark* v. *Hunton,. Sax. 216,* a leading case on this topic ; *Den* v. *Manners, Spen. 142 ; Hance* v. *West, 3 Vr. 233 ; Morgan* v. *Titus, 2 Gr. Ch. 201 ; White* v. *White, 1 Harr. 202,* where the provision was, as here, for life or widowhood ; *Thompson* v. *Egbert, 2 Harr. 459 ; Thomas* v. *Thomas, 2 C. E. Gr. 356 ; Wooster* v. *Cooper, 8 Dick. Ch. Rep. 682 ; Kearney* v. *Kearney, 2 C. E. Gr. 59.* I have no doubt that the complainant can maintain ejectment for the premises in question.

This result is, of course, fatal to the complainant's claim.

*Second.* I think, also, though it may not be necessary to express any opinion upon it, that the second point must be resolved against the complainant, and that if I am wrong in my first position, she should be put to her election between benefits under the will and her claim for dower, and that she cannot have both, on the plain ground that the assertion of her right of dower will interfere and be inconsistent with the disposition the testator has made of his property.

The testator, in point of fact, disposed of all his real estate,

most of it by specific devises, and where there was no specific devise he disposed of it by the direction and power of sale in his disposition of the residue of his estate; and in every instance it is plain, where there is a direct specific devise, that the testator intended that the devisee should take an absolute and full estate. He uses the word "absolute" in two or three cases. By the term "absolute," I think, he intended a full and complete estate.

Then, when he directs a sale, he directs his executors to give "good and sufficient deeds."

Now, I think that by that language the testator intended to direct his executors to give good and sufficient title. The will was not prepared by a skilled draftsman, and, in common parlance, to give a "good and sufficient deed" means to give a good and sufficient title; and I think that was the force of the language here used.

Some of the older English cases, and perhaps a few in this country, have held that a direction to executors to sell and convey real estate, did not necessarily indicate that they were to sell free and clear of the dower of the widow. But the modern decisions, which, in my judgment, are more in accordance with common sense, tend to hold that a power and direction to sell and convey necessarily includes the idea of conveying the title free and clear of dower. Except sales of real estate by sheriff on common-law judgments, the cases where a sale of real estate is made by a husband without his wife joining him are very rare indeed. Ordinary purchasers will not accept a title with an outstanding inchoate dower upon it, much less one that has dower fastened upon it by the death of the husband. Such a title is not marketable, in the ordinary sense of that word. On this subject I refer to the cases already cited, and to *Colgate* v. *Colgate, 8 C. E. Gr. 372,* and the cases there cited; *Stewart* v. *Stewart, 4 Stew. Eq. 399; Norris* v. *Clark, 2 Stock. 51; Griggs* v. *Veghte, 2 Dick. Ch. Rep. 179.*

The provision in the codicil that his daughter shall have the proceeds of the sale of a certain house free from any legacy or claim of the widow is made to except this bequest from the effect

of the general charge in the widow's favor found in the twentieth item. This provision in the twentieth item covers his whole estate, and of itself shows that the testator did not intend that his widow should have any other claim upon it.

The proofs show that the provision by the will is much larger than would be her right as dowress; so that it is not probable that she would choose the latter.

On the *third* question submitted, laying out of view the failure to file her dissent, I do not think the widow has made any such election as will prevent her from making her election to take dower instead of benefits under the will.

I will advise that the bill be dismissed, with costs.