No. 36,225

In re Estate of Charles Anderson, deceased (CHARLES W. W. ANDERSON et al., *Appellees*, v. HANNAH L. ROSEBROOK et al., *Appellants*).

(156 P. 2d 860)

Opinion filed March 10, 1945.

*John J. McCurdy*, of Lincoln, and *Ralph Knittle*, of Salina, were on the briefs for the appellants.

*Theodore M. Metz*, of Lincoln, argued the cause for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from a judgment determining the title to property on final settlement of an estate.

The facts giving rise to this controversy and necessary to a proper understanding of the issues can be stated thus:

Charles Anderson and Clara M. Anderson, his wife, were residents of Lincoln county. On December 22, 1911, both made wills drawn by the same person and witnessed by the same witnesses. On that

date Mr. Anderson held title in his name and was the owner of the farm home consisting of 240 acres and an additional tract of 140 acres located in that county, while Mrs. Anderson held title to and owned a residence property situated in the city of Lincoln, Kan.

By the terms of the husband's will he devised a life estate in all his real estate to the wife, after her death to Charles W. W. Anderson for his life and after his death to such individual's children in fee simple, share and share alike. Thereafter he made two codicils. By the provisions of one he devised a life estate to Emma Anderson, wife of Charles W. W. Anderson, in the event he predeceased her, and in the other he designated the last-named person as executor of his last will and testament in the event his wife, who had been designated as executrix under the original will, did not desire to serve in that capacity.

Under the terms of the wife's will a life estate in all the real property she owned or in which she had any right, title or interest at the time of her death, but more especially the residence in Lincoln, was devised to her husband; after his death a life estate therein was granted to Hannah L. Rosebrook and on her death the absolute fee title was devised to her children.

Somewhat similar bequests were made of the personal property belonging to the makers of each will, but since determination of the vesting of title to the real estate will determine its ultimate disposition such bequests will not be detailed nor will they be referred to hereafter.

Mr. Anderson died January 7, 1938. Thereafter, Mrs. Anderson filed a petition in probate court requesting that his will be admitted to probate. Her petition was granted. On January 12 following the will was admitted to probate and Charles W. W. Anderson was appointed and qualified as executor thereof, Mrs. Anderson having refused to act as executrix. Mrs. Anderson died on April 2, 1942, leaving the will heretofore mentioned.

Thereafter, on June 25, 1943, Charles W. W. Anderson as executor filed a petition in the probate court for final settlement of the Charles Anderson estate, alleging among other things he was the owner of a life estate in all the real estate left by such decedent, that on his death Emma Anderson acquired a life estate therein so long as she remained a widow and that on their deaths, depending upon who predeceased the other, title to such real estate vested in his children in equal shares.

That was when this controversy came to life. Shortly thereafter Hannah L. Rosebrook and others, including the administrator of Mrs. Anderson's estate, filed an answer to the petition for final settlement wherein they admitted Charles Anderson was the owner in his lifetime of the real estate described in such petition but alleged that upon his death Mrs. Anderson succeeded to an undivided one-half interest therein, that at the time of her death she was the absolute owner of such undivided one-half interest and, in effect, that title to her interest, except as to her administrator, vested in them under the terms and provisions of her will. On issues thus joined the probate court found generally in favor of the petitioner and rendered a judgment as requested by him in his petition. The intervenors who had filed the answer referred to then appealed to the district court. There the case was tried *de novo* and at the conclusion of the trial judgment was rendered decreeing that title to all real estate belonging to Charles Anderson deceased on the date of his death was vested in Charles W. W. Anderson for and during his lifetime, that after his death it vested in Emma Anderson for her lifetime or until she remarried, and that after the occurrence of either event if she survived her husband it vested in certain persons, naming them, who were the children of Charles W. W. Anderson. Hence this appeal.

While on first blush the controversy may appear complicated an examination of the record clearly discloses the fact to be that the issue presented by the proceedings in district court was not complex in character. No dispute existed between the parties as to the construction to be placed upon the terms and provisions of the Charles Anderson will. If by the proceedings had in probate court full force and effect was to be given the will title vested as provided for therein. The appellants simply contended that Mrs. Anderson as widow of the deceased had never made an election to take under the will, that therefore title to an undivided one-half of her husband's real estate descended to her by the laws of intestate succession, and that on her death such one-half interest as she had acquired from him in that manner was disposed of under the terms of her will. On the other hand, appellees contended the widow had made an election *in pais* to take under her husband's will, that by reason of that action she acquired only a life interest therein, and that on her death title to all of such real estate vested as provided for by its terms.

A situation similar to the one existing in district court, as we have heretofore related it, prevails on appellate review. Appellants do not complain of the reception or exclusion of any testimony received or rejected. While errors assigned by them relate to numerous findings of fact alleged to have been unsupported by the evidence and others, requested but not given, which they claim were supported by testimony the gist of their entire argument is that neither under the facts nor under the law applicable to the situation revealed by them was the trial court justified in concluding Mrs. Anderson elected to take under the will of her deceased husband. They concede that if such conclusion was proper that its judgment as rendered was not erroneous. Otherwise stated their contentions are (1) that the acts and conduct of Mrs. Anderson in evidencing her intent to take under the will of her husband and relied upon by appellees as having that effect did not establish and constitute an election *in pais* under our decisions, and (2) that even so, under the statute in force and effect she was required to make a written election in order to take under its terms and provisions.

In passing we pause to note it is not disputed, nor could it be with hope of success, that in this jurisdiction prior to July 1, 1939, the effective date of the new probate code, the action of electing to take under the terms of a will could be consummated by acts and conduct which accomplished that result as surely and effectively as if such election had been made in a more formal manner.

Appellants' first contention requires a review of the evidence adduced at the trial. We shall, however, first direct attention to pertinent decisions definitely recognizing the validity of elections *in pais* and dealing with questions pertaining to the nature of the acts and conduct relied on and the character of evidence required to establish their existence.

In the early case of *Reville v. Dubach*, 60 Kan. 572, 57 Pac. 522, it was held:

"Although the statute provides for a formal election by the widow whether she will take under the will of her deceased husband, in lieu of the share which the law gives her, an election may be made by acts *in pais,* and hence the record is not the only proof of such election.

"The proof of an implied election must be clear and satisfactory, but a deliberate and intelligent choice is deemed to be as binding as though it were formally made.

"If, after ascertaining her rights and learning what she could take under the will as well as by the law, she deliberately proceeds as though an election had been made, accepts the benefits of the will and actually takes under it, she

will be concluded, and will not be heard to say that no election has been made." (Syl. ¶¶ 1, 2, 3.)

Following came *Cook v. Lawson,* 63 Kan. 854, 66 Pac. 1028, where it was decided:

"Express proof of a widow's knowledge of her rights under the statute is not always necessary, as knowledge on her part may be inferred from her acts and declarations, and from the long failure to dissent from the provisions of the will." (Syl. ¶ 2.)

The doctrine announced in the preceding decisions was followed and further amplified in *Pirtle v. Pirtle,* 84 Kan. 782, 115 Pac. 543, in *Weisner v. Weisner,* 89 Kan. 352, 131 Pac. 608, and in *Ross v. Ross,* 111 Kan. 533, 207 Pac. 786.

Still later in *Carlyle v. Pee,* 125 Kan. 727, 265 Pac. 1113, we held:

"Rule followed that one who proceeds as though an election had been made to take under a will and who accepts benefits thereunder will be held to have made such an election.

"A beneficiary entitled to a life estate under the provisions of a will may not destroy the rights of a remainderman by disposing of the property by gift or devise." (Syl. ¶¶ 1, 2.)

Until now, our most recent decision on the subject was to be found in *Cox v. McBroom,* 155 Kan. 2, 122 P. 2d 185. There our cases dealing with the subject were catalogued and the principles announced therein adhered to, although with respect to what was required to effectuate such action it was announced:

"Where an election *in pais* is relied on, the acts done must have been plain and unequivocal, and done with full knowledge of the legal rights of a surviving spouse and the condition of the estate." (Syl. ¶ 2.)

With this doctrine firmly established we turn to the evidence. On examination it reveals Mrs. Anderson herself petitioned the court for probate of her husband's will. She was present on the morning of the day the will was read and after it was read she turned to Hannah L. Rosebrook, one of the appellants, who was also present and said, "Now you have heard just what is in there and that is the way it is going to be". Later, on the afternoon of the same day the probate judge advised her of her rights under the will and under the law. When he had completed his explanation she stated, "I don't want any set aside. I want it just the way the will was made out that father made it, that's just the way I want it to go". Still later she said, "I don't want any of the property, I just want a living off of it as long as I live; I want everything to go just the way Pa has fixed it".

Subsequent to admission of the will to probate and on divers occasions between that time and the date of her death the record discloses conduct as follows: The same day the will was probated she made a statement to Mr. McReynolds, her banker, that they had told her at the courthouse she had a right to half of everything and a little more if she wanted it, but that she told him (apparently referring to the probate judge) that she didn't want anything more, she wanted everything left like Grandpa had it.

On the day the inventory and appraisement was made after Alfred Nelson, who was one of the appraisers, had explained to her she had a right to half of the property and could have a money allowance if she wanted it that way she replied she wanted it "just the way Pa left it". While visiting with Steve Butner, an old friend, she said that everything was left to her in her lifetime, and that at her death the land went to William Anderson (meaning Charles W. W. Anderson) and the lot to Hannah Johnson (meaning Hannah L. Rosebrook). In talking with R. W. Wilcox, another neighbor, she stated that Charles had made a will and it would have to be settled the way he wanted it. She also told Ella Mathews, another old friend, that her husband left the property to her as long as she lived.

In addition to what has just been related there was testimony to the effect Mrs. Anderson claimed the right to and was in the possession of the husband's real estate during her life, that in 1939 she signed a landlord's waiver covering all of such property in order to permit the tenant to obtain a government seed loan and, although it must be conceded the evidence in this particular was not entirely satisfactory, that she exercised the authority and rights of a landlord over all of the land included in the estate and was paid the landlord's rent share from it either directly or through the estate during her lifetime. Evidence also was adduced at the trial which was fairly susceptible of the construction she was fully aware of the value of her husband's estate and considered what she had been devised and bequeathed by him to be ample to support her and care for her needs.

From what has been said it is apparent there was substantial competent evidence from which the trial court could determine, not only that Mrs. Anderson was advised by the probate judge of her legal rights under the law as well as the will on the date such instrument was presented for probate, but that at that time she unequivocally and understandingly with full knowledge of those rights

and of the condition of the estate definitely announced she desired to take under its terms and provisions. Likewise apparent is the fact that thereafter she proceeded as though she had made an election. Under such circumstances and conditions we have no difficulty in reaching the conclusion her acts and conduct constituted an election *in pais* which was as effective and binding under the provisions of sections 22-245 and 22-246, G. S. 1935, as if she had made it in writing or in some other formal manner.

As we have heretofore indicated, appellants assign error in the making of certain findings of fact and failure to make others requested by them. In our examination of the record we have found nothing to substantiate their contentions in that respect. There was, of course, evidence adduced by them which if given credence might have sustained contrary ones or justified the making of those requested by them. However, under the rule that on appeal where findings are supported by testimony this court will not weigh the evidence or pass upon the credibility of witnesses, and that the conclusion of the trial court as to the facts under such circumstances will not be disturbed, we observe no error which would permit a reversal of the judgement on that account.

There remains the contention that since the Charles Anderson estate was not closed until after the enactment of the new probate code the provisions of G. S. 1943 Supp. 59-2233, providing that if a surviving spouse has not consented to a will, as provided by law, such spouse will be deemed to have renounced and refused to elect to take under the will unless she shall have filed in the probate court an instrument in writing to accept the provisions of such will within six months after probate of the will, are applicable and preclude the trial court's conclusion of law that Mrs. Anderson elected *in pais* to take under the will and codicils of her husband. The claim might have some merit if in fact no election had been made by her prior to the effective date of the new code. The difficulty is that her election was made prior to that date under findings of the trial court which were sustained by the evidence and cannot now be disturbed. The question thus raised is not a new one and has been definitely passed upon by this court. Under circumstances and conditions which leave no room for differentiation this court in *Cox v. McBroom*, supra, said:

"There is also a suggestion that as the Marley M. McBroom estate was not closed by July 1, 1939, the provisions of the new probate code, which then

became effective, are applicable (G. S. 1941 Supp. 59-2602) and that because Melley J. McBroom did not file an election as required by G. S. 1941 Supp. 59-2233, she renounced the will. It is sufficient here to say that her election to take under her husband's will was evidenced by her acts and statements done or said prior to July 1, 1939. The record discloses only one incident after that date, and that her election had been made prior thereto." (p. 6):

It may be suggested the fact that some of Mrs. Anderson's conduct with respect to her understanding of the result of the action taken by her in probate court took place after July 1, 1939. Without taking the time or space to elaborate on the probative value of testimony of that nature it can be said that even under appellants' own theory, since her election was made prior to that date, such testimony served to corroborate the other evidence which definitely established an election *in pais* and in no sense could be considered as evidencing a contrary intention or having the effect of precluding that result.

One other argument requires consideration. It is alleged that on April 1, 1941, at a time when Mrs. Anderson was present in court as the respondent in an incompetency proceeding an attorney who represented her in that action, but who had not been employed by her in the estate matter, made the statement that he would not permit her to file an election under the will because she might want to mortgage or sell her undivided one-half interest in the real estate left by her husband. It is not suggested she made any statement to that effect or otherwise indicated her position on that subject. Nevertheless, it is contended the remark was binding upon her and precluded the judgment rendered by the trial court. There are several answers to this contention. In the first place the statement of the attorney at the time and under the conditions, if made, was not binding on Mrs. Anderson. In the next, it was only one of many adduced at the trial evidencing the situation, and was not conclusive on the question of whether she had made an election. And, last but not least, the making of the statement itself was a subject of controversy. Appellants requested a finding to the effect it had been made. This the trial court failed to make, although it did find the attorney in question had represented the executor of the estate and was representing Mrs. Anderson in the incompetency proceeding. In that situation we have no alternative but to conclude the trial court believed it had not been made and hence refused to incorporate it in his findings as requested. In any event such statement under the conditions existing at the time it is alleged to have been made has

no bearing on the result of this lawsuit and appellant's contention with respect to it is not well taken.

Having determined the surviving spouse of Charles Anderson relinquished her right to take under the statute of descents and distributions and in lieu thereof elected by her conduct to take under his last will and testament, it follows the judgment of the trial court decreeing such decedent's devisees and legatees and their respective interests to be as set forth in the order of final settlement was proper and should be sustained.

The judgment is affirmed.