No. 39,237

In the Matter of the Estate of Notie Bradley Randolph, Deceased. (MRS. JERE EVERETT, *Appellant,* v. W. F. SCHELL, as Administrator with Will Annexed of the Estate of Notie Bradley Randolph, deceased, et al., *Appellees.*)

(266 P. 2d 315)

Opinion filed January 23, 1954.

*George Barrett,* of Pratt, argued the cause and *Richard Barrett,* of Pratt, was with him on the briefs for the appellant.

*W. P. Wesley,* of Ulysses, argued the cause and *H. W. Stubbs,* of Ulysses, was with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a petition for final settlement of ancillary administration and to determine heirship. The appeal is from the

judgment of the trial court approving the account and disposing of property.

There is no dispute about the ultimate facts. The testatrix, Notie Bradley Randolph, died testate a resident of Tennessee on July 26, 1951. Her will was admitted to probate in Tennessee. She owned a section of land in Grant county, Kansas, which passed by her will, and an authenticated copy of it was admitted to probate in that county on February 11, 1952. Some years before her death and before her marriage she executed an oil and gas lease on this land. Amongst the other clauses in this lease was the following:

"4. The lessee shall pay lessor, as royalty, one-eighth of the market value at the well of the gas, as such, for gas sold from wells where gas only is found, and where not sold shall pay Fifty ($50.00) Dollars per annum as royalty from each such well, and while such royalty is so paid such well shall be held to be a producing well under paragraph numbered two hereof."

Pursuant to that lease a well was drilled on the section and gas in paying quantities was being produced at the time of her death. For some years royalties had been paid to Notie. Her will contained two clauses as follows:

"III.

"I own and am seized and possessed of a 640 acre tract of land lying in Grant County, Kansas, which I will to my sister, Ollie Finley, and her husband, Newt Finley, in its entirety, with the exception of one producing gas well on said farm or tract of land.

"IV.

"I will to Mrs. Jere Everett and to her surviving heirs, she being the daughter of my sister Ollie Finley, the proceeds or royalties arising from the gas well located on the 640 acre tract of land in Grant County, Kansas."

The statute of Tennessee provides that a husband may dissent from his wife's will and if he does so he shall be entitled to one-third of her personal estate. Testatrix's husband took advantage of this statute and dissented from his wife's will. By the provisions of this statute, the husband became entitled on the death of his wife to one-third of his wife's personal estate.

G. S. 1949, 59-503, provides as follows:

"Real estate situated in this state, owned by an intestate decedent who is a nonresident of this state at the time of his death, shall pass by intestate succession in the same manner as though he were a resident of the state at the time of his death. The personal property of such a decedent shall pass by intestate succession under the laws of the place of his residence at the time of his death."

Under our statute the Kansas real estate owned by Notie at her death passed according to the laws of Kansas as though she were a resident of Kansas at the time of her death. Had she been a resident of Kansas at the time of her death her husband when he elected to take under the statute instead of under the will would have been entitled to one-half of her estate.

The ancillary administrator when he filed his petition for final settlement took the position that the interest of Mrs. Jere Everett in the gas well bequeathed to her by testatrix was one-half rather than two-thirds, that is, her interest in the well was real estate under the Kansas statute and one-half interest in it passed to the husband. Mrs. Jere Everett filed in probate court a written defense to the administrator's petition for final accounting setting out facts about as in this opinion. The matter was transferred to the district court pursuant to G. S. 1951 Supp., 59-2402a.

The district court held as follows:

"On June 2, 1953, the above matter was transferred to the District Court of Grant County, Kansas, for determination upon the question of whether the surviving spouse, U. L. Randolph, of the decedent, under his election to take under the laws of Tennessee and Kansas as to the property of the decedent, is entitled to one-third of the royalties payable from a producing gas well located upon 640 acres of land in Grant County, Kansas, or to one-half thereof.

"Under the agreement of facts there was no severance of minerals under said land, and the oil and gas lease under which production was had on said land was executed some years prior to the marriage of the decedent and the surviving spouse.

"This court finds that the royalties payable under the oil and gas lease constitute a Profit a Prendre, and that said royalties are an incident of ownership and dependent upon the fee estate of the mineral ownership.

"Since the husband elected to take under the law, the will of the decedent is ineffective to in any way detract from his right to elect to take the statutory interest. Therefore, the husband is entitled to one-half of all royalty payments made by virtue of production on said Grant County land that had not accrued prior to the death of the decedent."

Judgment was rendered accordingly. The appeal is from that order.

Appellant's only specification of error is that the court erred in holding that the election of decedent's husband to take under the law rather than under decedent's will entitled the husband to take one-half of all royalties from production of gas from the well located on section 16 regardless of the provisions of decedent's will.

If the interest passed by the fourth paragraph of testatrix' will was part of her personal estate, her husband when he chose to dissent

from it took only one third under the statutes of Tennessee. If such interest was real estate, he took one half, pursuant to the Kansas statutes.

What passed by the third paragraph of the will was clearly real estate. The husband took one-half of the section devised therein and the devisee named took one-half. About that, there is no dispute. The clause, however, did not devise the entire estate of testatrix in the land. It excepted the producing well on the farm.

We turn then to the fourth clause. By it appellant was given "the proceeds or royalties arising from the gas well." Testatrix referred to the gas well she had reserved from the devise in the preceding clause. Our query then is what passed by the fourth clause—Was it oil and gas in place? The real question is—What did Notie own at the time of her death, since whatever passed under the will took effect then? In this connection the administrator argues:

"It is true that the lease provided for the payment of royalties to the lessor and that royalties are personal property. The testatrix did not die owning royalties. She died owning gas in place. Gas in place is a part of the realty and the surviving husband therefore inherited an undivided one-half interest in the gas along with the same interest in the remainder of the ingredients of the land."

The administrator cites and relies on *In re Estate of Cline*, 170 Kan. 496, 227 P. 2d 157. That was a case where a landowner had given a mortgage on his land and also a lease to take gravel therefrom. In his will he bequeathed the land in question to a daughter. In the probate court this daughter contended she should under the terms of her father's will have the land free and clear of the mortgage and she should be paid for gravel removed from the land in question since her father's death, the payment of which had been made to the executor. We are concerned here only with what we said and held on the latter question.

The gravel had been mined and removed from the land after decedent's death by the lessee under a lease made by decedent in his lifetime. The executor had collected the royalties thereon. It was argued by other devisees these earnings were personal assets of the estate and were subject to the payments of decedent's debts and costs of the administration. The situation there was much the same as though the executor of Notie's will had collected royalties from this gas well and was holding them until advised how he should distribute them. We were confronted with the question whether the royalties on gravel that was still in the ground when

decedent died were personal property or real estate at the time of his death. In dealing with that question we said:

"The instant lease existed on the land at the time of decedent's death. It may be well to again emphasize the funds in question were not personal property of the estate on the date of decedent's death. In fact such funds did not then exist. . . . A will speaks from and takes effect on the date of testator's death. At that time the gravel was an integral part of the land devised and title thereto passed to appellee."

We quoted what was then G. S. 1947 Supp., now G. S. 1949, 59-614, to sustain this statement. That section provides:

"Every devise of real estate shall pass all the estate of the testator therein, unless it clearly appears by the will that he intended a less estate to pass."

We said:

"There is nothing in the instant dev'se to indicate the testator intended less than the entire estate in the land should pass to appellee. Under these circumstances title to the proceeds from the sale of the gravel likewise should be regarded as having passed at the same time that title to the land, including the gravel, passed."

It seems unescapable that we regarded the gravel still in the ground at the time of decedent's death as real estate. How to distinguish the above case from the one we are considering here does not readily appear.

Our question turns not on what testatrix intended to bequeath Mrs. Everett. It really turns on what she actually owned at the time of her death, that is, into what classification did this particular property fall? This question may be answered by what was the effect of the oil and gas lease given by Notie in her lifetime and pursuant to which this well was drilled and production is being had. Had it not been for this lease of course title to all the oil and gas and other minerals would have gone with the title to the land. In practically all producing oil and gas leases there is what is called a working interest, usually seven-eighths of what is produced owned by the lessee or his assigns and the royalty interest usually consisting of one-eighth and owned by the lessor or his assigns.

We dealt with the nature of the lessee's working interest in *Harding v. Continental Pipe Line Co.*, 172 Kan. 724, 243 P. 2d 199. In that case a landowner had given an oil and gas lease on the land in question and there at the time of his death was production from oil wells thereon. After his death, his heirs at law brought an action

to quiet their title to the land in question, and for an accounting, and for damages for the conversion of oil from the land by the lessees, owners of the seven-eighths working interest. The theory of plaintiffs was that all the oil including the seven-eighths working interest of the lessee under a producing oil and gas lease became part of the lessor's estate on his death and if the lessee claimed any interest in the oil such claim constituted a demand against decedent's estate. In dealing with that question and referring to the working interest we said:

"The decedent-lessor had voluntarily conveyed that interest and was no longer the owner thereof. On his death his estate acquired no greater interest in the land than he possessed. His estate was subject to the rights he had granted to others."

Referring to the lease we said:

"Defendant's right to continue to produce oil therefrom was a vested right and defendant was protected in exercising such vested right in conformity with the terms of the contract."

Appellant relies on the above opinion and argues that if the lease had the effect of conferring a vested right to the seven-eights of the gas under the land in question, then it should be given the effect of severing the one-eighth of the gas in place from the real estate so as to make it personal property rather than part of the real estate. This argument is another way of stating the argument that while Notie owned the gas in place at the time of her death, she owned it subject to the oil and gas lease. This brings us once more to the question what was the effect of the lease on the lessor's one-eighth of the gas in place once there had been production?

We dealt with that question in *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463. There a landowner, a widower, had conveyed real estate to his children, reserving a life estate. Later he remarried and he and his wife gave an oil and gas lease on the land in question upon which producing wells were drilled. Later the lease was ratified by his heirs. He died leaving as heirs his widow and the three children by his first wife. The widow brought a partition action claiming she was entitled to a three-fourths interest in the oil and gas in place. The trial court held that the gas lease conveyed no title to the oil in the ground and when the owner of the life estate died his interest in the land ended, the fee went to the three children, and the administratrix was not to have any part

of the money realized from the sale of oil from the real property involved and the title to the fund followed the title to the real estate.

The administratrix appealed and the point of her appeal was that after the execution of the oil and gas lease and discovery of oil by drilling, the oil in the ground became dissevered absolutely from the land, was personal property, and on the death of the life tenant lessor became the property of his heirs, and personal representatives, or stated in another way, that the royalty arising under an oil and gas lease on real estate under which the lessor had only a life estate was personal property, was not appurtenant to the leased land and descended to the lessor's heirs upon his death and did not belong to the remaindermen. The opinion stated that counsel argued when an oil and gas lease had been granted and the lessees had discovered oil and gas a disseverance had taken place and the oil in place became personal property. They relied on cases where we had held, as we did in *Harding v. Continental Pipe Line Co.*, supra, that when oil and gas are found, the right to produce them becomes a vested right.

We pointed out that the nature of the grant of an oil and gas lease was a profit *a prendre*, which the lessee might use or refrain from using subject to the conditions of the grant. We stated the question to be whether leasing, exploring and discovery of oil worked a disseverance of oil in place from the real estate so it might be said to be personal property. We cited *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750; also *Hardcastle v. McCluskey*, 139 Kan. 757, 33 P. 2d 127. We remarked that our attention had been directed to *Bellport v. Harrison*, 123 Kan. 310, 255 Pac. 52, where we had held royalty to be personal property. We pointed out, however, that here we simply held that royalty referred not to oil and gas in place but to the share of the oil and gas produced and paid as compensation for the right to drill and produce. That case is analagous to those upon which the appellant depends here. See *Robinson v. Jones*, 119 Kan. 609, 240 Pac. 957; *Davis v. Hurst*, 150 Kan. 130, 90 P. 2d 1100; *Rathbun v. Williams*, 154 Kan. 601, 121 P. 2d 243; also *Hickey v. Dirks*, 156 Kan. 326, 133 P. 2d 107; also *Skelly Oil Co. v. Cities Service Oil Co.*, 160 Kan. 226, 160 P. 2d 246. In those cases we held under the facts and circumstances of each particular case that the word "royalty" referred to personal property. In none of them, however, did we give a meaning to the

word which would make it apply to oil and gas in the ground. We are not concerned here with a construction of Notie's will. We are concerned with what she owned when she died and the will took effect.

We have reached the conclusion that the oil and gas lease did not work a disseverance and what she owned was real estate and her husband when he elected to take under the statute rather than under the will took a half interest in the proceeds of the gas well, under the Kansas statute.

The judgment of the trial court is affirmed.

THIELE, WEDELL and PRICE, JJ., dissent.