[Civ. No. 21518.   Second Dist., Div. Three.   May 10, 1956.]

Estate of BESSIE P. HOWARD PATMORE, Deceased. FRANK T. PATMORE, Appellant, v. HATTIE H. MacKECKNIE, Respondent.

Rafter & Fredericks for Appellant.

Emil H. Koehl for Respondent.

VALLÉE, J.—Appeal from an order settling the final account of an executrix, a final decree of distribution, and an order denying a renewal of a family allowance.

Bessie Patmore died testate on February 26, 1953, a resident of California. She left surviving her husband Frank T. Patmore, appellant, and her sister Hattie H. MacKechnie, respondent and executrix of her will. Her estate was her separate property and consists of real and personal property in California, Kansas, and Oklahoma. The will bequeathed a few items of personal property and $10,000 cash to appellant; bequeathed certain stocks to respondent in trust to pay the income to appellant for life or until remarriage, with remainder to respondent; and bequeathed and devised the residue to respondent. The will was admitted to probate and domiciliary administration was begun in California. It was also admitted to probate and ancillary administration was begun in Kansas. We are not concerned with the estate in Oklahoma. During the course of administration in California the executrix received $21,659.72 from the ancillary administration in Kansas consisting of oil royalties, lease rentals,

proceeds from the sale of crops and a right of way, and paid taxes on Kansas land.

Respondent filed her second and final account and petitioned for final distribution of the California estate. Appellant filed objections to the account and to the petition for final distribution and a petition for renewal of a family allowance. He averred that he had theretofore filed in the probate court of Barton County, Kansas, in which the ancillary administration was being had, an election to take as the surviving husband under the laws of that state and not under the will; "[t]hat without prejudice to his rights to take under the Will in California, in the event that for any reason he should not be entitled to distribution under the laws of Kansas, objector hereby declines to accept distribution under the Will at this time, and upon distribution to him of one half the real property in Kansas your objector will file with this Court an election not to accept benefits under said Will"; that the final account, in purporting to show estate receipts, is defective in that it was impossible to determine therefrom which of the receipts arose from rents or royalties from real property located in Kansas and that the petition failed to request permission to pay half of the receipts from Kansas real estate to appellant. The court overruled the objections, denied renewal of the family allowance, settled the account, and ordered distribution in accord with the will.

The assignment of error is that the decree of distribution is erroneous in failing to recognize the Kansas election; that it is premature in decreeing distribution prior to closing of the administration in Kansas; that its effect is to decide the title to land in Kansas which is governed by the law of Kansas; and that it is erroneous in approving the commingling of Kansas assets which are realty with California assets and ordering distribution of such Kansas assets to respondent.

A fundamental principle of law universally recognized is that realty is exclusively subject to the *lex loci rei sitae*— to the law of the state within which it is situated. (*Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201, 206 [92 P. 184]; *Estate of Lund*, 26 Cal.2d 472, 477 [159 P.2d 643, 162 A.L.R. 606]; 21 Am.Jur. 861, § 874. See Civ. Code, § 755.)

Election with respect to realty is governed by the law of the state where the land is located. (69 C.J. 1091, § 2332.) This necessarily includes the proposition that the question

whether appellant has the right to take Kansas realty against the will must be determined by the law of Kansas. Under the Probate Code of Kansas appellant had the right to elect whether he would take under the will or take what he is entitled to by the Kansas law of intestate succession. (Gen. Stats., Kan., §§ 59-603, 59-2233.) The Probate Code of Kansas expressly provides that if the terms of the will are not applicable, realty shall be distributed according to the law of that state. (Gen. Stats., Kan., § 59-802.) A surviving husband who elects to take against the will takes half of the realty under that law. (Gen. Stats., Kan., § 59-505.)

█ Acceptance by the surviving spouse of the provisions of the will, or an election to take under the will in the state of the decedent's domicile, is binding elsewhere in the absence of a statute to the contrary; and such spouse may not elsewhere claim rights against the will. █ One who accepts a beneficial interest under a will thereby adopts the whole will and renounces every right or claim that is inconsistent with the will. (*Estate of Moore*, 62 Cal.App. 265, 270 [216 P. 981]; *Martin* v. *Battey*, 87 Kan. 582 [125 P. 88, Ann.Cas. 1914A 440].)[1] He cannot accept the provisions of the will in one state and renounce them in another. In such a case one may not eat his cake and yet have it; he cannot hold a bequest or devise with one hand and shove it away with the other. In other words, should appellant accept the property distributed to him by the decree of distribution appealed from, he would be precluded from taking against the will in Kansas. It was expressly so held in *Martin* v. *Battey*, 87 Kan. 582 [125 P. 88, Ann.Cas. 1914A 440]. In that case a wife domiciled in Illinois died there owning lands in that state

[1] Also see *Tacoma Sav. & Loan Assn.* v. *Nadham*, 14 Wn.2d 576 [128 P.2d 982, 991]; *In re Washburn's Estate*, 32 Minn. 336 [20 N.W. 324]; *In re McAllister's Estate*, 135 Minn. 357 [160 N.W. 1016, L.R.A. 1917C 504]; *Lindsley* v. *Patterson*, (Mo.) 177 S.W. 826, L.R.A. 1915F 680; *Wood* v. *Conqueror Trust Co.*, 265 Mo. 511 [178 S.W. 201]; *Colvin* v. *Hutchison*, 338 Mo. 576 [92 S.W.2d 667, 105 A.L.R. 266]; *Noyes* v. *Noyes*, 233 Mass. 55 [123 N.E. 395, 396]; *In re Cumming's Estate*, 153 Pa. 397 [25 A. 1125, 1126]; *In re Kees' Estate*, 239 Iowa 287 [31 N.W.2d 380]; *Huston* v. *Colonial Trust Co.*, (Tex.Civ.App.) 266 S.W.2d 231, 234; *Apperson* v. *Bolton*, 29 Ark. 418; *Jones* v. *Gerock*, 59 N.C. 190; *Blunt* v. *Gee*, 5 Call (Va.) 481; *Lawrence's Appeal*, 49 Conn. 411; *Cooke* v. *Fidelity Trust etc. Co.*, 104 Ky. 473 [47 S.W. 325]; *In re Owsley's Estate*, 122 Minn. 190 [142 N.W. 129]; *In re Powell's Estate*, 225 Pa. 518 [74 A. 421]; *Ashelford* v. *Chapman*, 81 Kan. 312 [105 P. 534]; *Crawford* v. *Bloss Estate*, 114 Mich. 204 [72 N.W. 148]; 69 C.J. 1091, § 2332; 57 Am.Jur. 1037, § 1526 et seq.; 2 Wharton, Conflict of Laws, 3d ed., 1346, § 599e; 2 Beale, Conflict of Laws, 976, § 253.1; anno: 105 A.L.R. 271.

and in Kansas. She left a will giving her husband a life estate in all of her property. The will was admitted to probate in Illinois and in Kansas. In Illinois the husband elected to take under the will. No election was made in Kansas. The question before the Supreme Court of Kansas was whether the Illinois election was binding in Kansas—whether a surviving husband can claim under the will in one jurisdiction and against it in another. After an exhaustive review of the authorities, the court held that the election to take under the will in Illinois was equally effectual in Kansas. In *Brooks* v. *Carson,* 166 Kan. 194 [200 P.2d 280], a widow was the sole beneficiary in her husband's will. He died a resident of Massachusetts, owning realty in Kansas. The law of Massachusetts required the widow to elect if she desired to take under the law rather than under the will. The law of Kansas required that she elect if she chose to take under the will rather than under the law. She made no election. Holding that the widow took under the will in Kansas, the court stated (200 P.2d 283):

"As a matter of fact, if she could by filing her election to take under the will in Kansas, take it here, and by not so filing in Massachusetts take under it in Massachusetts the same reasoning would allow her to take under the will in one state and under the law in another. Such inconsistent position may not be taken. See 11 Am.Jur. p. 349, where the rule is stated as follows: 'The acceptance by the party entitled to make the election of the provisions of a will or an election to take under the will in the state of the decedent's domicil is binding everywhere.' " (See to the same effect *In re Randolph's Estate,* 175 Kan. 685 [266 P.2d 315].)

▉ In California a husband has no interest in the separate property of the wife, and a widower is not put to an election by a bequest or devise to him of the separate property of the wife unless the will is so drawn as to make an election necessary. There is nothing in the will here which puts appellant to an election. ▉ As to separate property, he stands on the same footing as any other beneficiary. (*Estate of Arms,* 186 Cal. 554, 565 [199 P. 1053]. *Cf. Cook* v. *Cook,* 17 Cal.2d 639, 651 [111 P.2d 322]; *Estate of Boyd,* 95 Cal. App.2d 44, 45 [212 P.2d 17].) ▉ But any person may refuse to accept a provision for him in a will so long as the rights of third parties are not involved, and of course a widower may do so. (*Estate of Arms, supra,* 565; *Estate of Kalt,* 16 Cal.2d 807, 814 [108 P.2d 401, 133 A.L.R. 1424].)

"A legatee or devisee, under a will, is not bound to accept, but may renounce or disclaim his right under it, if he has not already accepted; and the renunciation or disclaimer relates back to the time the gift was made and no estate vests in him." (*Estate of Meyer*, 107 Cal.App.2d 799, 810 [238 P.2d 597].)

Renunciation of a foreign will in a foreign jurisdiction is given effect by comity in the state where the renouncing party has his domicile. (69 C.J. 1092, § 2332.) In *Whalley* v. *Lawrence's Estate*, 93 Vt. 424 [108 A. 387], the testator, domiciled in Vermont, left property in that state and in California. The will, admitted to probate in both states, made bequests to charity in excess of the limit allowed by the California law. The California court distributed the excess to the heirs who were given specific legacies by the will and remitted the balance of the estate to the Vermont executor. The heirs received the amounts decreed by the California court and asked the Vermont court for the specific legacies. It was held that the heirs, having accepted the sums decreed to them by the California court, thereby elected to take against the will and that such election would be given effect in Vermont, the state of the domicile.

Application of what we have said to the case at bar compels the conclusion that it was error to render the decree distributing to appellant and to respondent in trust the property bequeathed to appellant and for his benefit. There is no dispute about the fact that appellant elected to take against the will in Kansas. If that election is effective he is not entitled to take under the will in California. Whether his election is effective may not be determined by the Kansas court until final settlement of the estate there. At the hearing on the petition for distribution the parties appeared to agree that the Kansas estate was then ready for final settlement. No delay should ensue by reason of holding the California distribution open until the effectiveness of the election has been determined by the Kansas court. There was much confusion below with respect to appellant's rights in California. The trial judge and counsel for respondent were of the view that appellant was compelled to elect to take either under or against the will under California law. As we have seen, he has no such duty; but having elected to take against the will in Kansas, his election, if effective there, will be given effect in California. Counsel for respondent stated at the oral argument that if appellant takes what has been distrib-

uted to him in California he forfeits all rights in Kansas. The obvious purpose of respondent is to force appellant to forfeit those rights, and that may be the effect of the decree of distribution if it is permitted to stand. It would be unconscionable and a miscarriage of justice for the courts of this state to be parties to an attempt to deprive appellant of rights given him by the law of Kansas.

Appellant is entitled to know that his election is effective and that he will receive half the Kansas real estate before refusing to take under the will in California—not how much he will take in Kansas because he has made his election, but whether his election is valid. He may not renounce his election in Kansas, but it may be contested. Elections to take against the will have on occasion been held by the Kansas courts to be ineffective. (See *Cox* v. *McBroom*, 155 Kan. 2 [122 P.2d 185]; *In re Anderson's Estate*, 159 Kan. 512 [156 P.2d 860].) Respondent concedes that appellant "as yet, has no Order of any kind granting him anything from the Kansas estate." It would appear that the Kansas court has until final settlement of the estate there in which to determine whether appellant has taken under the will in California. (See *In re Randolph's Estate*, 175 Kan. 685 [266 P.2d 315]; *In re Rothrock's Estate*, 173 Kan. 717 [252 P.2d 598, 602]; *In re Osborne's Estate*, 167 Kan. 656 [208 P.2d 257]; *In re Hoover's Estate*, 156 Kan. 31 [131 P.2d 917].)

There is another reason why the California administration should not be closed. ▇ It is the general rule that surplus personal assets in an ancillary administration, i. e., personal assets not required for the payment of claims and expenses of administration lawfully filed and allowed in the ancillary administration, should be remitted to the domicile for final settlement and distribution of the estate. (*McCully* v. *Cooper*, 114 Cal. 258, 261 [46 P. 82, 55 Am.St.Rep. 66, 35 L.R.A. 492]. Also see *Estate of Lathrop*, 165 Cal. 243 [131 P. 752]; 34 C.J.S. 1253, § 1005; 21 Am.Jur., p. 855, § 863, p. 866, §§ 884, 885, 887; anno: 90 A.L.R. 1043.) ▇ A domiciliary representative into whose possession in the domiciliary jurisdiction foreign assets come must account for them in the domiciliary administration. (*Estate of Barreiro*, 125 Cal.App. 752, 765-767 [14 P.2d 786]; *In re Ortiz*, 86 Cal. 306 [24 P. 1034, 21 Am.St.Rep. 44]; *Estate of Conkey*, 35 Cal.App.2d 581, 585-586 [96 P.2d 383]; 21 Cal.Jur.2d 396, § 984; 21 Am. Jur. p. 854, § 862, p. 870, § 891; anno: 99 A.L.R. 1135, 132

A.L.R. 1369.) The Probate Code of Kansas provides that if administration of an estate of a nonresident is had in that state, the residue of the personal property and the proceeds from the sale of realty shall be transmitted to the domiciliary, ''or the court may direct it to be distributed according to the terms of the will applicable thereto, or if the terms of the will are not applicable thereto, or if there is no will, it shall be distributed according to the law of the decedent's residence if personal, and according to the laws of Kansas, if real estate. The real estate not sold in the course of administration shall be assigned according to the terms of the will applicable thereto, or if the terms of the will are not applicable thereto, or if there is no will, it shall pass according to the laws of this state.'' (Gen. Stats., Kan., § 59-802.) If the Kansas court in the exercise of its discretion orders the residue of surplus personal assets transmitted to the domiciliary, there will be no one to receive it. Respondent, and apparently the trial judge, were laboring under the mistaken notion that surplus assets which retain the character of realty in the hands of the executrix should be transmitted to Kansas. As we shall see, if the Kansas election is effective they should be distributed to appellant here.

Appellant's claim that the order settling the account is erroneous in approving the commingling of Kansas assets which have retained their character as realty with California assets, and that the decree is erroneous in distributing such Kansas assets to respondent, is well taken on the record. The general rule is that disposition of the proceeds of real estate which retain the character of that kind of property is governed by the *lex loci rei sitae.* (34 C.J.S. 1255, § 1005.) Whether an interest in a tangible thing is classified as real or personal property is determined by the law of the state where the thing is. (Rest., Conflict of Laws, § 208.) *In re Randolph's Estate,* 175 Kan. 685 [266 P.2d 315], was a contest of a petition for final settlement of an ancillary administration and to determine heirship. The testatrix, a resident of Tennessee, prior to her marriage executed an oil and gas lease on realty in Kansas and gas was produced in paying quantities. On her death her husband elected to take against the testatrix' will which devised royalties from a well to her niece. The question was whether royalties from gas produced after the death of the testatrix were real or personal property. The Supreme Court of Kansas held that the grant of an oil and gas lease is a

profit *à prendre*; that it does not work a disseverance of oil
or gas in place from the real estate so that it might be said
to be personal property; that the gas in place at the time of
the death of the testatrix and the royalties therefrom were
real property; and that the surviving husband, when he
elected to take under the statute rather than under the will,
took a half interest in the proceeds of the gas well.

The Randolph case is of direct application to the case at
bar. As noted, the executrix has received oil royalties from
the Kansas administration derived from Kansas realty which
are presumably realty. Notwithstanding appellant's objec-
tion to the final account on the ground it was impossible to
determine therefrom which of the receipts were from royal-
ties from realty in Kansas and to the petition for distribution
on the ground it did not ask that half the receipts from such
royalties be distributed to appellant, the court did not com-
pel the executrix to so account and apparently distributed all
of such royalties to respondent. When appellant elected to
take against the will in Kansas he became entitled to a half
interest in such royalties unless the Kansas court determines
that his election is ineffective. Such royalties do not lose
their character as realty by transmission from the ancillary
to the domiciliary administration. They should be accounted
for in detail and half thereof held and distributed to appel-
lant on determination of the effectiveness of his election in
Kansas, after deduction therefrom of their proportionate share
of properly deductible expenses. (*Estate of Hills,* 176 Cal.
232 [168 P. 20]; Rest., Conflict of Laws, §§ 8, 245.) If, as
respondent says, the federal estate tax was paid in full by
the California executrix, she was entitled to receive from the
Kansas administration that estate's proportionate share. Re-
spondent says the money received from Kansas was used for
that purpose, but there is nothing in the record to support
that statement. The account does not show how much of the
federal estate tax should be allocated to a half interest in the
Kansas realty. If all of the money received from Kansas
was used in paying the Kansas estate's share of the federal
estate tax, there is none of such money to be distributed
to appellant. On the other hand, if any of the money
received from Kansas, which retains its character as realty,
remains after payment of the federal estate tax, appellant
is entitled to distribution here of half thereof, less any prop-
erly deductible expenses, on determination in Kansas of the
effectiveness of his election. Counsel for respondent so con-

ceded at the hearing below. Referring to the $21,659.72 which the executrix received from the Kansas administration, he said that appellant "would only be entitled to one-half of that. . . . Out of that, of course, must necessarily come, which would be a matter of accounting later, the proportion of the expenses and so on so far as Kansas is concerned."

The will bequeathed to appellant a television set, a gas range, a Frigidaire, a bedroom set, a rug, 2 beds, a lamp, a chest, a set of dishes, all appraised at $425; an accordion appraised at $600, an accordion appraised at $50, a record player appraised at $25, and a toaster appraised at $3.00. Very shortly after the will was admitted to probate and respondent had been appointed executrix, appellant asked her if he might take the accordions, the record player, and the toaster and have the use of them, since he was getting them under the will. She said, "OK" and he took them. The inventory and appraisement, filed many months after appellant received these items, lists them as assets of the estate. In his objections to the petition for distribution, appellant stated he was holding the items for the executrix. At the hearing he offered to return them to the executrix at any time she named and disclaimed any interest in them. Respondent claims the taking of the accordions, record player, and toaster constituted an election to take under the will.

To constitute an election *in pais* to take under a will, the acts done must be plain and unequivocal and with full knowledge of the legal rights of the surviving spouse under both the law and the will and of the condition of the estate; it must be a deliberate and intelligent choice. The acts done must clearly evidence an intent to elect, and the party must have so dealt with the property left him by the will that it would be inequitable to permit him to avoid those acts and disclaim his intent. (*Cook* v. *Cook*, 17 Cal.2d 639, 651 [111 P.2d 322] ; *In re Smith*, 108 Cal. 115, 120 [40 P. 1037] ; *Estate of Klingenberg*, 94 Cal.App.2d 240, 245 [210 P.2d 514] ; *Estate of McCarthy*, 127 Cal.App. 80, 85 [15 P.2d 223] ; *In re Garden's Estate*, 158 Kan. 554 [148 P.2d 745].)[2]

[2]Also see *In re Hoover's Estate*, 155 Kan. 647 [127 P.2d 460]; *Sill* v. *Sill*, 31 Kan. 248 [1 P. 556]; *James* v. *Dunstan*, 38 Kan. 289 [16 P. 459]; *Payton* v. *Bowen*, 14 R.I. 375; *Millikin* v. *Welliver*, 37 Ohio St. 460; *Anderson's Appeal*, 36 Pa. 476, 496; *In re Woodburn's Estate*, 138 Pa. 606 [21 A. 16, 21 Am.St.Rep. 932]; *Garn* v. *Garn*, 135 Ind. 687 [35 N.E. 394]; *O'Driscoll* v. *Koger*, 2 Desaus. (S.C.) 295; *English* v. *English's Exrs.*, 3 N.J.Eq. 504, 510 [29 Am.Dec. 730]; *Tooke* v. *Hardeman*, 7 Ga. 20, 30; *Hill* v. *Hill*, 88 Ga. 612 [15 S.E. 674]; *Clark* v.

Acceptance of a benefit under a will when made in ignorance of the beneficiary's rights or under a misapprehension as to the condition of the testator's estate or other pertinent factual considerations does not operate to constitute an election.[3]

There was no evidence that appellant elected to take under the will. There was no showing that he knew that by taking the few items of personal property he thereby elected to take under the will. There was no evidence he had any knowledge of the condition of the estate in either California or Kansas. There was no proof that he knew he could elect to take against the will in Kansas and that if he did so he could not take under it in California. In short, there was no proof that he had any knowledge of his legal rights in either Kansas or California. He did not deal with the property so that it would be inequitable to permit him to avoid his acts and disclaim his intent. On the contrary, it would be inequitable to compel him to retain the few items of nominal value and forego his rights under the law of Kansas.

Appellant did not offer or produce any evidence on his petition for renewal of the family allowance and he has not made any point with respect to it in his brief. He is deemed to have abandoned his appeal from the order denying a renewal.

The order denying a renewal of the family allowance is affirmed. The order settling the second and final account and the decree of distribution are reversed. Respondent shall bear appellant's costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 5, 1956.

---

*Hershey*, 52 Ark. 473 [12 S.W. 1077]; *Stone* v. *Vandermark*, 146 Ill. 312 [34 N.E. 150]; *Reaves* v. *Garrett's Admr.*, 34 Ala. 558, 562; *Yorkly* v. *Stimson*, 97 N.C. 236 [1 S.E. 452].

[3]See *Owens* v. *Andrews*, 17 N.M. 597 [131 P. 1004, 49 L.R.A.N.S. 1072]; *Waggoner* v. *Waggoner*, 111 Va. 325 [68 S.E. 990, 30 L.R.A.N.S. 644]; *Crocker* v. *Beal*, F.Cas. No. 3,396; *United States* v. *Duncan*, F.Cas. No. 15,002; *Canavan* v. *McNulty*, 328 Ill. 388 [159 N.E. 782]; *Schaffenacker* v. *Beil*, 320 Ill. 31 [150 N.E. 333]; *Hahn* v. *Dunn*, 211 Iowa 678 [234 N.W. 247, 82 A.L.R. 1503]; *McCallister* v. *Brand*, 50 Ky. 370; *Cooper* v. *Cooper*, 56 N.J.Eq. 48 [38 A. 198]; *Shanley* v. *Shanley*, 34 App.Div. 172 [54 N.Y.S. 652]; *In re Beck's Estate*, 265 Pa. 51 [108 A. 261]; *In re Williams' Estate*, 145 Wn. 19 [258 P. 851].